# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, SS.                                     CASE NO.
                                                2284CV02952

STEVEN C. FUSTOLO

    *Plaintiff*

v.

SELECT PORTFOLIO SERVICING, INC.
AND                                             **VERIFIED COMPLAINT**
FEDERAL HOME LOAN MORTGAGE
CORP., AS TRUSTEE FOR THE BENEFIT
OF THE FREDDIE MAC SEASONED
CREDIT RISK TRANSFER TRUST,
SERIES 2019-2

    *Defendants*

**NATURE OF THE CASE**

1.      Plaintiff, Steven C. Fustolo, brings this action against Defendants, the purported owner of his mortgage and promissory note (Select Portfolio Servicing, Inc.) and against his mortgage servicer (Federal Home Loan Mortgage Corp., as Trustee). Defendants are not entitled to foreclose for the following reasons: (a) the original lender dissolved approximately two years *before* the mortgage was assigned in its name, making the assignment invalid; (b) the promissory note has never been assigned to the Defendants; (c) Defendants' notice pursuant to Paragraph 22 of Plaintiff's mortgage was deficient and therefore invalid, making it improper to accelerate or foreclose upon the mortgage; and (d) Defendants committed other unfair and deceptive acts and practices in connection with collection of the debt, including defamation and slander of title.

1

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over the Defendants in this action because the Defendants transact business in the Commonwealth, have caused injury in the Commonwealth as described herein, and because they purport to have an interest in real property in the Commonwealth or to be acting on a person with such an interest.

3.      Venue is proper in this Court because the subject property is located in Boston, Suffolk County, Massachusetts.

## PARTIES

4.      Plaintiff, Steven C. Fustolo, ("Fustolo") is a natural person residing in Massachusetts, and he is the owner of the subject property located at 115 Salem Street, Unit 14, Boston, Suffolk County, Massachusetts 02113 (the "Property").

5.      Defendant, Select Portfolio Servicing, Inc. ("SPS"), is a Utah corporation with principal offices located at 3217 S. Decker Lake Dr., Salt Lake City, Utah 84119. SPS is the servicer of the mortgage, and has, at all relevant times, acted both on its own behalf and on behalf of the purported owner of the mortgage, the co-defendant named in the next paragraph. SPS, in its capacity as servicer, handles communications with borrowers like Fustolo, conducts collection, and directs foreclosure activities. On information and belief, all SPS's actions were taken pursuant to a Pooling and Servicing Agreement between itself and the co-defendant naming SPS as power of attorney and authorized agent.

6.      Defendant, Federal Home Loan Mortgage Corp., as Trustee for the Benefit of the Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2019-2 ("Freddie Mac"), is a

2

Date Filed 12/30/2022 1:49 PM
Superior Court - Suffolk
Docket Number

government-sponsored enterprise with principal offices located at 1551 Park Run Drive, McLean, Virginia 22102.

## COMMON FACTS

**A.    The Original Lender Dissolved Prior to Any Assignments, so Later Assignments in Its Name Were Invalid.**

7.    Fustolo acquired the Property in December 2007 with a quitclaim deed recorded in the Suffolk Registry of Deeds ("Registry") at book 42920, page 260 (the "Deed"). (**Exhibit 1**.)

8.    In 2011 Fustolo mortgaged the property to Union Capital Mortgage Business Trust ("Union Capital") with a mortgage to Mortgage Electronic Registration Systems, Inc., as Nominee for Union Capital, recorded in the Registry at book 42920, page 316, on January 11, 2008 in the amount of $283,500 (the "Mortgage"). (**Exhibit 2**.)

9.    In connection with the Mortgage, Fustolo executed a promissory note (the "Note") dated January 10, 2008, in the amount of $283,500, and payable to Union Capital. (**Exhibit 3**.)

10.    The Mortgage was purportedly assigned four (4) times thereafter, as follows:

   a.    On December 21, 2011, an assignment was recorded from Mortgage Electronic Registration Systems, Inc. as Nominee for Union Capital Mortgage Business Trust to HSBC Bank USA, N.A. ("HSBC") (the "First Assignment"). (**Exhibit 4**.)

   b.    On January 31, 2017, an assignment was recorded from HSBC to Nationstar Mortgage, LLC ("Nationstar") (the "Second Assignment"). (**Exhibit 5**.)

   c.    On July 22, 2022, an assignment was recorded from Nationstar to Federal Home Loan Mortgage Corporation, as Trustee for the Benefit of the Seasoned

3

Credit Risk Transfer Trust, Series 2019-2 ("Trust 2019-2") (the "Third Assignment"). (**Exhibit 6**.)

    d.  On October 20, 2022, an assignment was recorded from Trust 2019-2 to the defendant, Freddie Mac ("the Fourth Assignment"). (**Exhibit 7**.)

11.    The original lender, Union Capital, was a trust whose trustee was UCM, LLC, a Massachusetts limited liability company ("UCM").

12.    Union Capital was terminated on June 29, 2010 by filing a Termination of Trust with the Massachusetts Secretary of the Commonwealth. (**Exhibit 8**.)

13.    The UCM filed a Certificate of Cancellation of the LLC on June 30, 2010, stating that the reason for the filing of the cancellation was that the "TRUST FOR WHICH THIS ENTITY WAS ACTING AS TRUSTEE IS BEING DISSOLVED" (capitalization in original). (**Exhibit 9**.)

14.    Thus, as of June 30, 2010, neither Union Capital nor its trustee UCM existed as business entities.

15.    Because Union Capital and its trustee UCM no longer existed, they had no legal right to assign or transfer any interest in the Mortgage or the associated note.

16.    Nevertheless, as stated above, the First Assignment was recorded on December 21, 2011. This assignment was purportedly recorded on behalf of Union Capital. Union Capital had been terminated approximately *one and a half years later*.

17.    As a result, the First Assignment was recorded without any legal authority to do so, and thus was legally ineffective.

18.    The remaining assignments were therefore also ineffective.

4

19.    The current purported assignee, Freddie Mac, has no right to foreclose.

**B.    SPS and Freddie Mac's Faulty Valuation of the Property.**

20.    On April 2, 2021, SPS sent Fustolo a valuation of the subject property asserting that it was worth between $500,000 and $510,000 (the "SPS Valuation"). (**Exhibit 10.**)

21.    Fustolo is generally familiar with the property and the neighborhood and believed this amount to be significantly higher than the actual market value. Accordingly, Fustolo obtained a valuation from an area real estate brokerage, the Core Property Group, which concluded that the value was significantly less, $350,000.

22.    On May 20, 2021, Fustolo, by counsel, sent this valuation along with a letter explaining the numerous errors and inconsistencies in the SPS Valuation. (**Exhibit 11**.) These statements are hereby incorporated by reference herein.

23.    On May 27, 2021, SPS sent a letter acknowledging Fustolo's letter referenced in the preceding paragraph. (**Exhibit 12**.)

24.    On June 25, 2021, SPS sent another letter stating that "We are in the process of completing our research of the issue(s) identified in your correspondence and expect to provide a response to you within the next fifteen days." (**Exhibit 13**.)

25.    SPS failed to ever respond to Fustolo's correspondence disputing the value of the Property.

26.    Property values are vitally important and could, in fact, change whether SPS and Freddie Mac foreclosed. Lenders like the defendants use the Net Present Value of a property as a key factor in the decision whether to offer a foreclosure alternative like a loan modification or forbearance, or whether to simply foreclose.

5

27.     In fact, SPS expressly told Fustolo in other correspondence that the property value *was* a factor in deciding whether to offer any foreclosure alternatives, stating:

> SPS is providing the enclosed property valuation report. The report was developed as part of your request for mortgage assistance, and we may have used this information when deciding if you were eligible for an assistance option.
> ….
> If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. ….

28.     SPS and Freddie Mac's refusal to consider the value of the property – especially in light of their statement that the property value was a factor in their decision – was an unfair or deceptive act or practice.

## C.     Freddie Mac and SPS Do Not Hold the Note.

29.     On May 12, 2021, Fustolo sent a letter to SPS requesting, among other things, "a copy of the front and back of the note with any indorsements or allonges." (**Exhibit 14**.)

30.     On May 20, 2021, SPS responded by providing, among other things, the three-page Note signed by Fustolo, payable to Union Capital. There were no indorsements on the Note, nor were any allonges attached to it. (**Exhibit 15**, Attached in Part.)

31.     Accordingly, the Note has never been transferred or assigned to any of the purported assignees of the Mortgage.

32.     It is well established that to foreclose, a lender must possess both a valid assignment of the relevant mortgage and hold the borrower's Note. *Eaton v. Federal National Mortgage Ass'n*, 462 Mass. 569 (2012).

33.     Accordingly, because Freddie Mac and SPS do not hold Fustolo's Note, no foreclosure is permitted at this time.

6

**D.    The Defendants' Debt Collection Attempts.**

34.    May 6, 2013, an involuntary bankruptcy was filed against Fustolo in the U.S. Bankruptcy Court for the District of Massachusetts, case no. 13-12692. (**Exhibit 16**.)

35.    At the outset of Fustolo's bankruptcy, the automatic stay went into effect pursuant to 11 U.S.C. § 362. The automatic stay requires that, as a matter of law, upon the filing of a bankruptcy all creditors are prohibited from commencement of any judicial action against, or to attempt to collect any debt from, a debtor.

36.    Defendants have initiated judicial action against Fustolo by, among other things, filing a Servicemembers Civil Relief Act proceeding against him, Land Court case no. 22SM003428, on or about November 14, 2022. (**Exhibit 17.**)

37.    Furthermore, Defendants have attempted to collect the mortgage debt from him by (a) sending collection notices, and (b) reporting the account on his credit report.

38.    Defendants sent collection notices, including, without limitation, mortgage statements demanding payment, virtually every month. A specimen of one of these recent collection demands is attached hereto. (**Exhibit 18**.)

39.    Defendants also reported the account on Fustolo's credit report in an attempt to collect the debt from him, contending – in violation of the automatic stay – that Fustolo is presently obligated to tender mortgage payments. (**Exhibit 19.**)

40.    Defendants' furnishing of this information on Fustolo's report is an attempt to collect a debt because a debt collector's "ability to report on the credit habits of customers is [a] powerful tool designed, in part, to wrench compliance with payment terms from its cardholder." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D. P.R. 1993).

E.    **Fustolo's Damages.**

41.    As a result of the Defendants' conduct described throughout this Complaint, Fustolo has suffered a variety of damages. His property is in foreclosure and may have a sale date set at any moment. He has been subject to repeated debt collection efforts in violation of the automatic stay, and in violation of Massachusetts law. Defendants have, in the course of all their activities, made false statements about their ability to foreclose, their standing to foreclose, and their right to collect the associated debt from Fustolo. He has suffered physically and emotionally from this ordeal, is frequently unable to sleep, and reports significant feelings of stress, tension, and frustration from the ongoing uncertainty about the possible loss of irreplaceable real estate. Fustolo receives regular and continuous harassing and embarrassing calls and other communications from brokers, lawyers, hard money lenders, and other third parties seeking information on the so-called distressed property sale. Some communications received have been from business associates Fustolo knows, thereby damaging Fustolo's reputation within the business community.

**COUNT I:**
**DECLARATORY JUDGMENT – INVALID MORTGAGE**
**ASSIGNMENTS, NO TRANSFER OF NOTE**
**(SPS and Freddie Mac)**

42.    The preceding allegations are hereby incorporated by reference.

43.    Massachusetts is a non-judicial foreclosure state allowing a mortgagee to foreclose under a general power of sale. G.L. c. 244, §§ 11-17C. To challenge the right of a purported mortgagee to foreclose, a homeowner may file an affirmative action under the declaratory judgment statute. G.L. c. 231A, § 1.

8

44.     Once a homeowner files an affirmative lawsuit challenging a mortgagee's right to foreclose, the burden shifts to the mortgagee to prove its entitlement to conduct the foreclosure. "The fundamental rule as to the burden of proof is that whenever the existence of any fact is necessary in order that a party may make out his case, or establish a defense, the burden is on such party to show the existence of such fact." *Willet v. Rich*, 142 Mass. 356, 357, 7 N.E. 776, 777 (1886).

45.     The Massachusetts Supreme Judicial Court held that before a lender may foreclose, it must hold a valid assignment of the homeowner's mortgage. *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 941 N.E.2d 40 (2011).

46.     Subsequently, the SJC also held that the lender, to be entitled to foreclose, must also be a holder of the note, or an authorized agent of one who holds the note. *Eaton v. Fannie Mae*, 462 Mass. 569, 969 N.E.2d 1118 (2012).

47.     In this matter, Freddie Mac and its servicer SPS are not entitled to foreclose because they hold neither the Mortgage nor the Note.

48.     First, as explained in more detail above, the original lender, Union Capital, had dissolved at the time the Mortgage was assigned via the First Assignment, making the First Assignment and all subsequent assignments ineffective and invalid.

49.     Second, the Note was never indorsed or assigned to any subsequent holders.

50.     There are therefore disputed legal issues as between Fustolo and the defendants, in that Fustolo contends that the foregoing deprives the defendants of their right to foreclose, while the defendants contend that foreclosure is valid in these circumstances.

**COUNT II:**
**DECLARATORY JUDGMENT – DEFENDANTS'**
**FAULTY PARAGAPH 22 NOTICE**
**(SPS and Freddie Mac)**

51.     The preceding allegations are hereby incorporated by reference.

52.     The Mortgage states at Paragraph 22:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument and sale of the Property. **The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.** If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate full payment of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. ….

(Emphasis added.)

53.     On or about September 7, 2021, SPS sent Fustolo a form 90-Day Right to Cure Your Mortgage Default Letter ("90-Day Notice") purporting to comply with G.L. c. 244, § 35A and Paragraph 22 of the Mortgage. A copy of the notice sent to Fustolo was filed with the Land Court along with an affidavit from a representative of SPS. (**Exhibit 20.**)

54.     The 90-Day Notice did not state that Fustolo had the "right to bring a court action" as required under Paragraph 22.

10

55.    Also on September 7, 2021, SPS sent Fustolo a letter with no heading (the "Letter"). The Letter did include the "right to bring a court action" language. (**Exhibit 20**.)

56.    It is black-letter law that a foreclosing mortgagee foreclosing under the power of sale at G.L. c. 183, § 21, must strictly comply with the terms of the mortgage. That statute provides that

> [U]pon any default … the mortgagee … may sell the mortgaged premises …. By public auction … **first complying with the terms of the mortgage** and with the statues relating to the foreclosure of mortgages by the exercise of a power of sale ….

G.L. c. 183, § 21 (emphasis added). Likewise, the Supreme Judicial Court held in *Wayne Inv. Corp. v. Abbott*, 350 Mass. 775, 775 (1966) that a lender must show "that the title was acquired strictly according to the power of sale provided in the mortgage" and reaffirmed this principle in *Bank of New York v. Bailey*, 460 Mass. 327 (2011) and *Pinti v. Emigrant Mortg. Co. Inc.*, 472 Mass. 226 (2012).

57.    On these principles, SPS failed to provide Fustolo with a strictly compliant notice pursuant to Paragraph 22 of the Mortgage and G.L. c. 183, § 21. Paragraph 22 expressly requires one notice, not multiple notices. Our courts have repeatedly held that "substantial compliance" is not sufficient to comply with the obligations under Massachusetts law. A Notice comprised of *two* notices, neither of which effectively and strictly informs a borrower of their rights, is critically deficient.

58.    The consequences of SPS's invalid notice are as follows:

a)    SPS did not validly accelerate the Note and no acceleration has thus occurred;

11

b)      SPS committed unfair and deceptive business practices by claiming in written correspondence that default and acceleration occurred;

c)      SPSP committed unfair and deceptive business practices by taking steps to foreclose despite the Note not being in default and not being accelerated.

59.      Where, notwithstanding the foregoing, Defendants have already scheduled one foreclosure, and have requested permission from the Bankruptcy Court for relief from the automatic stay in order to foreclose, there is a clear dispute between Fustolo and the Defendants over Defendants' right to foreclose.

60.      Fustolo is entitled to a declaratory judgment preventing Defendants from any further action with regard to the Mortgage and Note, including a prohibition on any collection or foreclosure activity.

## COUNT III:
### SPS VIOLATED RESPA BY FAILING TO CORRECT AN INCORRECT OVERVALUATION OF THE SUBJECT PROPERTY
### (SPS)

61.      The preceding allegations are hereby incorporated by reference.

62.      Pursuant to the Real Estate Settlement Procedures Act ("RESPA") and its corresponding regulation, Regulation X, 12 C.F.R. § 1024, Defendant, SPS, was required to respond to, and correct, any notices of error sent by Fustolo.

63.      The mortgage at issue is a federally related mortgage loan subject to RESPA.

64.      As stated above and incorporated by reference, despite Fustolo's notice informing SPS of the overvaluation of the subject property, SPS failed or refused to correct this error.

12

65.    Fustolo was damaged in that he was deprived of potential alternatives to foreclosure, loan modifications, or other workout solutions, and that he incurred costs and legal fees related to the dispute and this action.

## COUNT IV:
## DEFAMATION
## (SPS and Freddie Mac)

66.    The preceding allegations are hereby incorporated by reference.

67.    Defendants made false statements about Fustolo, namely, that he owed Freddie Mac payments under the Note and Mortgage, that the payments were in default, and that Freddie Mac was the party entitled to foreclose on and to sell the Property. These statements were untrue because (as detailed throughout the Complaint) Defendants are not entitled to enforce the Mortgage and Note against Fustolo.

68.    The statements were published to third parties in filings with the Suffolk Registry of Deeds and its users and viewers, the Land Court, and in a newspaper or newspapers of general circulation, including without limitation the Boston Globe on or about November 18, 2022.

69.    Defendants knew the statements were false, or acted negligently or recklessly in failing to determine whether the statements were true. Defendants' business routinely involves the documentation of title to assets supposedly belonging to them and there was no reason Defendants should not have been able to determine that they do not have the right to enforce the Mortgage and Note.

70.    The statements damaged Fustolo's described throughout this Complaint and incorporated by reference, including but not limited to economic harm, reputational harm, physical and emotional distress, mental anguish, and a decrease in the value of the Property due

13

to the false statements that Defendants own a defaulted Mortgage and Note and are entitled to foreclose on the Property.

71.     In the alternative, the statement prejudiced Fustolo in his profession as a Certified Public Accountant by, inter alia, damaging his reputation by misrepresenting his financial relationship with, and obligations to, the Defendants, also causing physical and emotional distress and mental anguish.

**COUNT V:**
**SLANDER OF TITLE/INJURIOUS FALSEHOOD**
**(SPS and Freddie Mac)**

72.     The preceding allegations are hereby incorporated by reference.

73.     Defendants made false statements harmful to Fustolo's pecuniary interests in the Property, namely, that Defendants are entitled to enforce the Mortgage and Note, that Fustolo is in default under alleged obligations to Defendants under the Mortgage and Note, and that the Property is being foreclosed on and will be sold at auction. These statements were untrue because (as detailed throughout the Complaint) Defendants are not entitled to enforce the Mortgage and Note against Fustolo.

74.     Defendants knew the statements were false, or acted negligently or recklessly in failing to determine whether the statements were true.

75.     Defendants' statements caused Fustolo pecuniary damage as described throughout this Complaint, as well as in that these false statements have muddied Fustolo's title to the Property, deterring potential buyers of the Property, reducing the value of the Property, and generally encumbering the title of the Property with false or fraudulent filings in the Registry of Deeds, the Land Court, and in publications in newspapers of general circulation.

14

## COUNT VI:
## DEBT COLLECTION ACT, G.L. c. 93, § 49
### (SPS and Freddie Mac)

76.    The preceding allegations are hereby incorporated by reference.

77.    Massachusetts law prohibits creditors from foreclosing on a mortgage if the creditor is not the mortgage servicer as well as the holder of the promissory note.

78.    Defendants collected or attempted to collect and foreclose on Fustolo's mortgage in an unfair, deceptive, and unreasonable manner as described above and as incorporated by reference.

79.    Fustolo was damaged are described herein and as incorporated by reference.

80.    Accordingly, Defendants are liable to Fustolo for violation of G.L. c. 93, § 49.

### REQUEST FOR RELIEF

WHEREFORE, Fustolo respectfully request that the Honorable Court grant the following relief:

a)    Judgment in Fustolo's favor and against Defendants on all counts of the Complaint, including, without limitation, a declaration that Defendants are prohibited from foreclosing on the subject Property because they do not validly hold the Mortgage and Note, and because of the above-described violations of Paragraph 22 of the Mortgage.

b)    Actual damages, costs, interest, and attorney's fees;

c)    Treble damages pursuant to G.L. c. 93A; and

d)    Any other relief that they may be entitled to, at law or in equity.

15

## JURY TRIAL DEMAND

Plaintiff hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

Plaintiff,
Steven C. Fustolo,
By counsel,

/s/ *Joe Dye Culik*

Joe Dye Culik (BBO #672665)
DYE CULIK PC
1200 E. Morehead St., Suite 260
Charlotte, NC 28204
(980) 999-3557
(980) 999-3537 (Fax)
jc@dyeculik.com

December 30, 2022

16

## VERIFICATION OF COMPLAINT

I, Steven C. Fustolo, depose and state that I am the plaintiff in this action, that I have read the foregoing Complaint, that no material facts have been omitted therefrom, and that the facts stated in it are true and correct based on my personal knowledge except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

Steven C. Fustolo

.After Recording Return To:
Steven C. Fustolo
87 Terrace Hall Avenue
Burlington, Massachusetts 01830

2007 00138945
Bk: 42920 Pg: 260   Doc: UD
Page: 1 of 2   12/31/2007 01:38 PM

**EXHIBIT**
**1**

Attested hereto

*Francis M. Roache*

Francis M. Roache
Register of Deeds

# QUITCLAIM DEED

**115 Salem Street Realty, LLC**, a Massachusetts limited liability company having an address of 87 Terrace Hall Avenue, Burlington, MA 01830 in consideration of **One Dollar ($1.00 )** grant to **Steven C. Fustolo, Individually, of 87 Terrace Hall Avenue, Burlington, Massachusetts.**

with *QUITCLAIM COVENANTS*

**Unit Nos. 9, 10, 11, 12, 13, 14, 15, and 16 of 115 Salem Street Condominium (the "Condominium"), located at 115 Salem Street, Boston, Massachusetts, created pursuant to and subject to the provisions of Chapter 183A, of the General Laws of Massachusetts, by Master Deed dated April 1, 2004 and recorded with Suffolk County Registry of Deeds on April 14, 2004 in Book 34247, Page 253, as amended (hereinafter referred to as "Master Deed").**

**The Units are shown on Floor Plans of the Building referenced in and/or recorded with the Master Deed to which are affixed the verified statement of a registered architect, registered professional engineer or registered land surveyor.**

**The Units are conveyed together with the undivided percentage interest in the Condominium Common Areas and Facilities as defined and described in the Master Deed and the exclusive right to use those Common Areas and Facilities, the Limited Common Areas and the Exclusive Use Areas appurtenant to the Units as set forth in the Master Deed.**

**The Units are subject to and have the benefit of all rights, easements, agreements, interest and provisions contained in the Master Deed and the Condominium Trust and By-Laws recorded therewith, as any of the same may be amended from time to time pursuant to the provisions thereof, as well as the provisions of Chapter 183A of the Massachusetts General Laws as the same may be amended from time to time.**

**The Units are also conveyed with the benefit of easement reserved in a deed from Viola R. Pinanksi to Pasquale DeBonis et al dated October 23, 1948 and recorded with said Deeds in Book 6473, Page 294.**

**Being the same premises conveyed to 115 Salem Street Realty, LLC by deed dated September 5, 2003, recorded with the Suffolk Registry of Deeds in Book 32702, Page 253..**



- 1 -

**After Recording Return To:**
Steven C. Fustolo
87 Terrace Hall Avenue
Burlington, Massachusetts 01830

Executed as a sealed instrument this ___/5rd___ day of **November, 2007.**


115 Salem Street Realty, LLC

BY:  Property Trust Corporation, a Massachusetts
    Corporation, its Manager

_____
By Steven C. Fustolo, President


## COMMONWEALTH OF MASSACHUSETTS


On this ___/5rd___ day of **November, 2007**, before me, the undersigned notary public, personally appeared **Steven C. Fustolo,** proved to me through satisfactory evidence of identification, which was Massachusetts drivers licenses, to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily and for its stated purpose.

_____
**Notary Public:**
My Commission Expires:

"Notary Public"
Michael J. Gill
Commonwealth of Massachusetts
My Commission Expires on Feb. 2, 2009

**Property Address:  115 Salem Street, Units 9, 10, 11, 12,13, 14, 15, 16, Boston, MA 02113**

Attested hereto

*Francis M. Roache* (signature)

Francis M. Roache
Register of Deeds



2008 00003138

Bk: 42960 Pg: 316     Doc: MTG
Page: 1 of 23     01/11/2008 03:01 PM

Return To:
TAYLOR, BEAN AND WHITAKER

1417 N. MAGNOLIA AVENUE
OCALA, FL  34475

Prepared By:
UNION CAPITAL MORTGAGE BUSINESS TRUST
45 BRAINTREE HILL PK., STE 400
BRAINTREE,  MA 02184
JESSICA HARRIS

————————————————[Space Above This Line For Recording Data]————————————————

07120074

## MORTGAGE

MIN 100310800071200741

**EXHIBIT 2**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     JANUARY 10TH, 2008          ,
together with all Riders to this document.
(B) "Borrower" is  STEVEN C. FUSTOLO

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3022 1/01

VMP -6A(MA) (0401)

Page 1 of 15     Initials: _____

VMP Mortgage Solutions (800)521-7291

(D) "**Lender**" is   UNION CAPITAL MORTGAGE BUSINESS TRUST

Lender is a  A BUSINESS TRUST
organized and existing under the laws of    MASSACHUSETTS
Lender's address is  45 BRAINTREE HILL PK., STE 400, BRAINTREE,   MA 02184

(E) "**Note**" means the promissory note signed by Borrower and dated    JANUARY 10TH, 2008
The Note states that Borrower owes Lender   TWO HUNDRED EIGHTY THREE THOUSAND FIVE
HUNDRED AND  NO/100. Dollars
(U.S. $     283,500.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    FEBRUARY 1ST, 2038
(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

Exhibit A

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "**Escrow Items**" means those items that are described in Section 3.
(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: XCF by MC

-6A(MA) (0401)                    Page 2 of 15                    Form 3022  1/01

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

|  COUNTY  |  of  |  SUFFOLK  | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction]: | |

Parcel ID Number:                 which currently has the address of

115 SALEM STREET UNIT #14        [Street]

BOSTON                 [City] , Massachusetts    02113    [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: _____

VMP-6A(MA) (0401)            Page 3 of 15            Form 3022   1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

Initials: _DCF by mf_

VMP-6A(MA) (0401)          Page 4 of 15          Form 3022  1/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: _____

Form 3022   1/01

VMP-6A(MA) (0401)                            Page 5 of 15

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _____

-6A(MA) (0401)                    Page 6 of 15                    Form 3022  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _____

VMP-6A(MA) (0401)    Page 7 of 15    Form 3022    1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: _[signature]_ by _[initials]_

-6A(MA) (0401)                    Page 8 of 15                    Form 3022    1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials:

-6A(MA) (0401)                    Page 8 of 15                    Form 3022    1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

VMP-6A(MA) (0401)                     Page 10 of 15                     Form 3022  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

Initials: _____

VMP-6A(MA) (0401)          Page 11 of 15          Form 3022  1/01

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____ by mē

-6A(MA) (0401)                    Page 12 of 15                    Form 3022   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

Initials:

-8A(MA) (0401)    Page 13 of 15    Form 3022   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____   _____ (Seal)
                                                 STEVEN C. FUSTOLO          -Borrower

_____   _____ (Seal)
                                                                            -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                    -Borrower

VMP-6A(MA) (0401)                    Page 14 of 15                    Form 3022   1/01

COMMONWEALTH OF MASSACHUSETTS,            *Norfolk* County ss:

, before me, the undersigned notary public,

On this 10TH    day of   JANUARY 2008
personally appeared STEVEN C. FUSTOLO

proved to me through satisfactory evidence of identification, which was/were *[signature]* ;
to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that
he/she/they signed it voluntarily for its stated purpose.
My Commission Expires:
(Seal)

Notary Public



‐6A(MA) (0401)            Page 16 of 15            Initials: _____    Form 3022  1/01

# CONDOMINIUM RIDER

07120074

THIS CONDOMINIUM RIDER is made this     10TH     day of   JANUARY  2008            ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
                        UNION CAPITAL MORTGAGE BUSINESS TRUST
                                                                                                (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

                    115 SALEM STREET UNIT #14, BOSTON, MA   02113
                                        [Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:
                        115 SALEM STREET CONDOMINIUM
                                [Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

   CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
   A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and
(iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.
   B. Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to
Lender and which provides insurance coverage in the amounts (including deductible levels), for the
periods, and against loss by fire, hazards included within the term "extended coverage," and any other
hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance,

MULTISTATE CONDOMINIUM RIDER-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

**-8R** (0008)          Form 3140 1/01
Page 1 of 3            Initials:
VMP MORTGAGE FORMS - (800)521-7291

then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

-8R (0008)                Page 2 of 3                Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

by Attorney-in-fact

_Steven C. Fustolo_ (Seal)                                    _____ (Seal)
STEVEN C. FUSTOLO        -Borrower                                                      -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


VMP-8R (0008)                    Page 3 of 3                    Form 3140 1/01

# 1-4 FAMILY RIDER
## (Assignment of Rents)

07120074

THIS 1-4 FAMILY RIDER is made this    10TH       day of       JANUARY 2008              ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
            UNION CAPITAL MORTGAGE BUSINESS TRUST
                                                                        (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

            115 SALEM STREET UNIT #14, BOSTON, MA   02113
                        [Property Address]

    1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

    A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials:
                            Page 1 of 4                                    Form 3170 1/01
@-57R (0008)                VMP MORTGAGE FORMS - (800)521-7291

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

Initials: _____

VMP-57R (0008)    Page 2 of 4    Form 3170 1/01

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials:

-57 R (0008)                          Page 3 of 4                          Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_by Mary Breitzel Attorney in Fact_

_____ (Seal)          _____ (Seal)
STEVEN C. FUSTOLO                        -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                                          -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                                          -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                                          -Borrower                                                      -Borrower

VMP-57R (0008)                    Page 4 of 4                    Form 3170 1/01

File Number: **07-2401**

## EXHIBIT "A"

## LEGAL DESCRIPTION

Closing Date:          **1/10/2008**

Borrower(s):          **Steven C. Fustolo**

Property Address:     **115 Salem Street, Unit 14, Boston, MA  02113**

Unit No. 14 of 115 Salem Street Condominium (the "Condominium"), located at 115 Salem Street, Boston, Massachusetts, created pursuant to and subject to the provisions of Chapter 183A, of the General Laws of Massachusetts, by Master Deed dated April 1, 2004 and recorded with Suffolk County Registry of Deeds on April 14, 2004 in Book 34247, Page 253, as amended (hereinafter referred to as "Master Deed").

The Unit is shown on Floor Plans of the Building referenced in and/or recorded with the Master Deed to which are affixed the verified statement of a registered architect, registered professional engineer or registered land surveyor.

The Unit is conveyed together with the undivided percentage interest of 5.52% in the Condominium Common Areas and Facilities as defined and described in the Master Deed and the exclusive right to use those Common Areas and Facilities, the Limited Common Areas and the Exclusive Use Areas appurtenant to the Units as set forth in the Master Deed.

The Unit is subject to and have the benefit of all rights, easements, agreements, interest and provisions contained in the Master Deed and the Condominium Trust and By-Laws recorded therewith, as any of the same may be amended from time to time pursuant to the provisions thereof, as well as the provisions of Chapter 183A of the Massachusetts General Laws as the same may be amended from time to time.

For grantor's title see deed recorded with the Suffolk County Registry of Deeds in Book _42920_ Page _260._

*Fustolo*

## NOTE

LOAN #:07120074
100310800071200741

JANUARY 10TH, 2008                BRAINTREE                MA
[Date]                            [City]                   [State]

115 SALEM STREET UNIT #14, BOSTON, MA  02113
(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  283,500.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  UNION CAPITAL MORTGAGE BUSINESS TRUST

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.125    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1ST    day of each month beginning on  MARCH 1ST, 2008    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  FEBRUARY 1ST, 2038    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  45 BRAINTREE HILL PK., STE 400, BRAINTREE, MA 02184
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $    1,910.00  .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N (0207)                Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3

AD999 1104                                                                002399 0799

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    3.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-6N (3201)                         Page 2 of 3                         Form 3200 1/01
Initials:



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

by Marcy Breintzel Attorney-in-fact

_____ (Seal)
STEVEN C. FUSTOLO          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

[Sign Original Only]

-6N (0107)                    Page 3 of 3                    Form 3200 1/01

AD999 1104                                          0023990799

Date Filed 12/30/2022 1:49 PM
Superior Court - Suffolk
Docket Number
Total Pages:    2

Bk: 48839 Pg: 265

Case 1:23-cv-10166-DJC    Document 1-3    Filed 01/26/23    Page 47 of 105



Bk: 48839 Pg: 265    Doc: AST
Page: 1 of 2    12/21/2011 02:44 PM

**Attested hereto**

**Francis M. Roache**
**Register of Deeds**

## CORPORATE ASSIGNMENT OF MORTGAGE

**Suffolk, Massachusetts**
**SELLER'S SERVICING #:4570112** "FUSTOLO"

**MERS #: 100310800071200741 SIS #: 1-888-679-6377**

Date of Assignment: December 14th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
UNION CAPITAL MORTGAGE BUSINESS TRUST, ITS SUCCCESSORS AND ASSIGNS at 2929
WALDEN AVENUE, DEPEW, NY 14043
Assignee: HSBC BANK USA, N.A. at 2929 WALDEN AVENUE, DEPEW, NY 14043

Executed By: STEVEN C. FUSTOLO To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS NOMINEE FOR UNION CAPITAL MORTGAGE BUSINESS TRUST
Date of Mortgage: 01/10/2008 Recorded: 01/11/2008 in Book/Reel/Liber: 42960 Page/Folio: 316 as
Instrument No.: 200800003138 In the County of Suffolk, State of Massachusetts.

Property Address: 115 SALEM STREET UNIT 14, BOSTON, MA 02113

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $283,500.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the
full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor
hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR UNION
CAPITAL MORTGAGE BUSINESS TRUST, ITS SUCCCESSORS AND ASSIGNS
On December 14th, 2011

By:
MICHAEL PETER, Assistant
Secretary

(SEAL — MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., 1999, DELAWARE)

*JJ1*JJ1HSBC*12/14/2011 05:45:18 PM* HSBC01HSBCA00000000000000000791216* MASUFFO* 4570112 MASTATE_MORT_ASSIGN_ASSN **RXRHSBC*

Recording Requested By:
HSBC MORTGAGE CORPORATION (USA)
When Recorded Return To:
DISCHARGE DEPT 1-800-338-4626
HSBC BANK USA NA
2929 WALDEN AVENUE
DEPEW, NY 14043

Property Address:
115 SALEM STREET UNIT 14,
BOSTON, MA, 02113

**EXHIBIT**
**4**

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF New York
COUNTY OF Erie

On the 14th day of December in the year 2011 before me, the undersigned Notary Public in and for said State, personally appeared MICHAEL PETER, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal,

DANIEL HERINGTON
Notary Expires: 09/22/2012  #01HE6193739
Qualified in Erie County



(This area for notarial seal)

*JJ1*JJ1HSBC*12/14/2011 05:45:18 PM* HSBC01HSBCA00000000000000000791216* MASUFFO* 4570112 MASTATE_MORT_ASSIGN_ASSN **RXRHSBC*

Total Pages: 2



**2017 00009590**
Bk: 57499 Pg: 18    Page: 1 of 2
Recorded: 01/31/2017 09:16 AM
ATTEST:Stephen J. Murphy, Register
Suffolk County Registry of Deeds

## CORPORATE ASSIGNMENT OF MORTGAGE

**Suffolk, Massachusetts**
**SELLER'S SERVICING #: 2019792783 "FUSTOLO" Investor's Loan #: 500583501 Old
Servicing #: 4570112**

Date of Assignment: January 3rd, 2017
Assignor: HSBC Bank USA, N.A. at 2929 Walden Avenue, Depew, NY 14043
Assignee: Nationstar Mortgage LLC at 8950 Cypress Waters Blvd., Coppell, TX 75019

Executed By: Steven C. Fustolo To: Mortgage Electronic Registration Systems, Inc. as nominee for
Union Capital Mortgage Business Trust
Dated: 01-10-2008 Recorded: 01-11-2008 as Instrument No. 2008 00003138, Book/Reel/Liber 42960,
Page/Folio 316 In the County of Suffolk, State of Massachusetts.

Property Address: 115 Salem St Unit #14, Boston, MA 02113

> **EXHIBIT**
> **5**

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $283,500.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the
Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

HSBC Bank USA, N.A.
On January 3rd, 2017

By:_____
Kraig Jones, Vice President and Assistant Secretary

*1/3/2017 4:34:04 PM*32249731*32249733*536*MASTATE_MORT_ASSIGN_ASSN

Recording Requested By:
Mission Global LLC
When Recorded Return To:
 Recording Dept.
Mission Global LLC
1120 S. Capital of Texas Hwy
Bldg 3 Suite 150
Austin, TX 78746

*Property Address:*
*115 Salem St Unit #14, Boston, MA 02113*

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Texas
COUNTY OF TRAVIS

On January 3rd, 2017, before me, Allison Paige Smith, a Notary Public in and for TRAVIS in the State of Texas, personally appeared Kraig Jones, Vice President and Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Allison Paige Smith
Notary Expires: 3/27/2017   #129365890

ALLISON PAIGE SMITH
Notary Public, State of Texas
My Commission Expires
March 27, 2017

(This area for notarial seal)

*1/3/2017 4:34:04 PM*32249731*32249733*536*MASTATE_MORT_ASSIGN_ASSN

# Suffolk County Registry of Deeds

# Electronically Recorded Document

## This is the first page of the document - Do not remove

---

### Recording Information

| | |
|---|---|
| Document Number | : 64113 |
| Document Type | : AST |
| Recorded Date | : July 22, 2022 |
| Recorded Time | : 03:48:37 PM |
| | |
| Recorded Book and Page | : 67985 / 37 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 980764 |
| Recording Fee | : $105.00 |


EXHIBIT
6

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**

Total Pages: 2

**CORPORATE ASSIGNMENT OF MORTGAGE**

TS Ref #: 0009220000099701
MA/SUFFOLK

Assignment Prepared on: April 22, 2022

**Assignor: NATIONSTAR MORTGAGE LLC**, at 8950 CYPRESS WATERS BLVD, COPPELL, TX, 75019-4620

**Assignee: FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR THE BENEFIT OF THE SEASONED CREDIT RISK TRANSFER TRUST, SERIES 2019-2**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 1/10/2008, in the amount of $283,500.00, executed by STEVEN C. FUSTOLO to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS MORTGAGEE, AS NOMINEE FOR UNION CAPITAL MORTGAGE BUSINESS TRUST, IT'S SUCCESSORS AND ASSIGNS and Recorded: 1/11/2008, Instrument #: 2008 00003138, Book / Liber / Reel: 42960, Page / Image / Folio: 316 in SUFFOLK County, State of Massachusetts.

Property Address: 115 SALEM STREET UNIT #14, BOSTON, MA, 02113

The undersigned, affirms that to the best of his/her knowledge, that no mortgage broker or mortgage loan originator was involved in the mortgage.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

115 SALEM STREET UNIT #14, BOSTON, MA, 02113

**Recording Requested By:**
Richmond Monroe Group

**When Recorded Return To:**
Jeff Prose
Richmond Monroe Group
82 Jim Linegar Ln
Branson West, MO, 65737
(417) 447-2931

Page: 2 of 2 / TS Ref #: 0009220000099701

NATIONSTAR MORTGAGE LLC

On: **JUL 12 2022**

By: _____

Name: **Terefe Tekle**

Title: **Vice President**

STATE OF **Texas**
COUNTY OF **Denton**

On **JUL 12 2022**, before me, **Sylvia Ramirez**, a Notary Public in and for **Denton** in the State of **Texas**, personally appeared **Terefe Tekle**, **Vice President**, NATIONSTAR MORTGAGE LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
**Sylvia Ramirez**
Notary Expires: **MAR 07 2023**          / #: 131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-07-2023
Notary ID 131921660

**MA/SUFFOLK**

# Suffolk County Registry of Deeds

# Electronically Recorded Document

## This is the first page of the document - Do not remove

---

### Recording Information

| | |
|---|---|
| Document Number | : 87224 |
| Document Type | : AST |
| Recorded Date | : October 20, 2022 |
| Recorded Time | : 03:00:32 PM |
| | |
| Recorded Book and Page | : 68333 / 203 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 992495 |
| Recording Fee | : $105.00 |

**EXHIBIT**

**7**

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**

Date Filed 12/30/2022 1:49 PM
Superior Court - Suffolk
Docket Number

Bk: 68333 Pg: 204

Case 1:23-cv-10166-DJC    Document 1-3    Filed 01/26/23    Page 55 of 105

Total Pages: 2

**CORPORATE ASSIGNMENT OF MORTGAGE**

TS Ref #: 0009220000122462
MA/SUFFOLK

Assignment Prepared on: September 28, 2022

**Assignor:** **FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR THE BENEFIT OF THE SEASONED CREDIT RISK TRANSFER TRUST, SERIES 2019-2 BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT,** at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**Assignee:** **FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR THE BENEFIT OF THE FREDDIE MAC SEASONED CREDIT RISK TRANSFER TRUST, SERIES 2019-2,** at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 1/10/2008, in the amount of $283,500.00, executed by STEVEN C. FUSTOLO to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR UNION CAPITAL MORTGAGE BUSINESS TRUST, ITS SUCCESSORS AND ASSIGNS and Recorded: 1/11/2008, Instrument #: 2008 00003138, Book / Liber / Reel: 42960, Page / Image / Folio: 316 in SUFFOLK County, State of Massachusetts.

Property Address: 115 SALEM STREET UNIT #14, BOSTON, MA, 02113

The undersigned, affirms that to the best of his/her knowledge, that no mortgage broker or mortgage loan originator was involved in the mortgage.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

**Recording Requested By:**
Residential RealEstate Review

**When Recorded Return To:**
Collateral Document Services
Residential RealEstate Review
3217 S. Decker Lake Drive
Salt Lake City, UT, 84119
(800) 258-8602

Page: 2 of 2 / TS Ref #: 0009220000122462

FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR THE BENEFIT OF THE SEASONED
CREDIT RISK TRANSFER TRUST, SERIES 2019-2 BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY
IN FACT

On: OCT 0 6 2022

By:

Name: Sherry Nielsen
Document Control Officer

Title:

State of UTAH
County of SALT LAKE

On OCT 0 6 2022 , before me, Rylee Lopez , a Notary Public in
and for SALT LAKE in the State of UTAH, personally appeared Sherry Nielsen ,
Document Control Officer , FEDERAL HOME LOAN MORTGAGE CORPORATION, AS
TRUSTEE FOR THE BENEFIT OF THE SEASONED CREDIT RISK TRANSFER TRUST, SERIES 2019-2 BY
SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their
signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

Rylee Lopez        725552
Notary Expires: JUL 0 5 2026        / #:

RYLEE LOPEZ
Notary Public  State of Utah
My Commission Expires on:
July 05, 2026
Comm. Number: 725552

MA/SUFFOLK

$35\ 214131$

$Tz$

## UCM, LLC, TRUSTEE FOR
## UNION CAPITAL MORTGAGE BUSINESS TRUST



**TRUST TERMINATED**
$6-29-201^u$

### ACTION IN LIEU OF MEETING
### OF MANAGERS OF SOLE TRUSTEE

**PURPOSE – TERMINATION OF TRUST**

**June 29, 2010**

**RECEIVED**

**JUL 15 2010**

SECRETARY OF THE COMMONWEALTH
CORPORATIONS DIVISION

The undersigned, being all of the managers of UCM, LLC, a Massachusetts limited liability company (the "Trustee"), which is the sole trustee of Union Capital Mortgage Business Trust, a Massachusetts business trust (the "Trust"), hereby consent in writing on behalf of the Trustee to the actions set forth in the form of the following votes, which shall be treated as votes for all purposes as fully as if said actions and votes had been adopted at a duly called and held meeting of the Managers of the Trustee of the Trust:

**EXHIBIT 8**

| | |
|---|---|
| <u>WHEREAS:</u> | George N. Fabrizio and John K. Richman (the "Trust shareholders"), the sole shareholders of the Trust, each individually own 100 shares, and together are the owners of 200 shares of common shares of the Trust (the "Trust Shares"); |
| <u>WHEREAS:</u> | The Trust Shareholders has indicated to the Trust that they desire to terminate the Trust; |
| <u>WHEREAS:</u> | The Trustee has determined that it is in the best interest of the Trust that it be terminated; as of June 29, 2010. |
| <u>NOW, THEREFORE, IT IS VOTED:</u> | That the Trust, formed by declaration of trust dated December 29, 2003 is hereby terminated; |
| <u>VOTED:</u> | That the Trustee approve in all respects the termination of the Trust; |
| <u>VOTED:</u> | That George N. Fabrizio and John K. Richman, as Managers of the Trustee of the Trust, be, and hereby are, authorized and directed to do all things necessary and appropriate to comply with and carry out the intents and purposes of these votes, including taking physical and legal possession of the Trust Shares, and to the extent that any of the actions contemplated by the foregoing votes may have already been taken, such action is hereby approved, ratified and confirmed in all respects as if said action or actions had been taken subsequent to and in full accordance with this vote. |

$3$

The action taken by the foregoing votes shall be deemed to have been taken on the date first set forth above.

UCM, LLC, Trustee

By: _____

George N. Fabrizio, Manager

By: _____

John K. Richman, Manager

Check #  *Mc Fo*

# MGL CHAPTER 182

RECEIVED

JUL 15 2010

SECRETARY OF THE COMMONWEALTH
CORPORATIONS DIVISION

*William Francis Galvin*

## WILLIAM FRANCIS GALVIN
## SECRETARY OF THE COMMONWEALTH

*George Fabrizio*

_____

_____

_____

_____

Merge Y      N

R/A    Y_____ N

Cons.  Y      N

Pr.Off _____

Tru    _____

TRUST
TERMINATED
*June 29th, 2010*

MA SOC    Filing Number: 201007494740    Date: 06/30/2010 12:06 PM



## The Commonwealth of Massachusetts
## William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

**Minimum Fee: $100.00**



**EXHIBIT**
**9**

### Certificate of Cancellation
(General Laws, Chapter )

**Federal Employer Identification Number:** <u>000856415</u> *(must be 9 digits)*

**1. The exact name of the Domestic Limited Liability Company (LLC) is:** <u>UCM, LLC</u>

**2. The date of filing of the original certificate of organization:** <u>12/19/2003</u>

**3. The reason for filing the certificate of cancellation:**
<u>TRUST FOR WHICH THIS ENTITY WAS ACTING AS TRUSTEE IS BEING DISSOLVED.</u>

**4. If the certificate of cancellation is to be effective at a later date, state the effective date:**

**5. Any additional information to be included therein:**

**SIGNED UNDER THE PENALTIES OF PERJURY, this 30 Day of June, 2010,**
<u>GEORGE N FABRIZIO</u> **, Signature of Applicant.**

© 2001 - 2010 Commonwealth of Massachusetts
All Rights Reserved

# THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

June 30, 2010 12:06 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

0-4814-0



**SPS** SELECT *Portfolio* SERVICING, inc.

Sign up for paperless delivery
at www.spservicing.com

Paperless



April 2 2021

 STEVEN C FUSTOLO
110 CHURCH ST
WINCHESTER, MA 01890

**Account Number:** 0023990799
**Property Address:** 115 SALEM STREET
UNIT 14
BOSTON, MA 02113

EXHIBIT
**10**

Dear Customer(s):

SPS is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has either been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

SPS has received your request for assistance. Pursuant to Federal law, SPS is providing the enclosed property valuation report. The report was developed as part of your request for mortgage assistance, and we may have used this information when deciding if you were eligible for an assistance option. If you have questions, please call us at one of the telephone numbers below.

If you have any questions, your assigned Relationship Manager, Tanner Strong, can be reached toll free at (888) 818-6032 x 38865 or by email at Relationship.Manager@spservicing.com.

At SPS, any of our Customer Care Experts can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact SPS. Our toll-free number is 800-258-8602 and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

**Notice of Error or Information Request**

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

CF006 2490

00241485000363010400

0023990799



If you would like counseling or assistance you can contact the following: U.S. Department of Housing and Urban Development. For a list of homeownership counselors or counseling organizations in your area, go to https://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or you can call HUD at 1-800-569-4287.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**



www.RRReview.com
866-876-5095

| Account # | 0023990799 | Order # | 5127240 |
|---|---|---|---|
| Client | Select Portfolio Servicing, Inc. | Group ID | SE3 |
| Inspection | Exterior | Occupancy | Occupied |
| Effective Date | 03/30/2021 | County | Suffolk |
| Owner | STEVEN FUSTOLO | Parcel # | W03P02370S070 |
| Address | 115 SALEM ST APT 14 BOSTON MA 02113 | | |
| Correction | | | |

## General Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Type | Condo | Housing Inventory | Stable | Tax Assessed Value | $440,200 | Neighborhood Low | $369,000 |
| Location | Urban | Property Values | Stable | Annual Property Tax | $4,648 | Neighborhood High | $5,900,000 |
| Ownership Type | Condominium | Land Value | $1,000 | Neighborhood Predominant | $1,295,184 | Typical/Distressed Marketing | 95 / 30 days |

## Listing and Sale Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Currently Listed | No | Current List Price | - | Last Sale Price | - | Prev. List (12 Mos.) | No |
| Listing Date | - | Original List Price | - | Last Sale Date | - | Prev. Sale (36 Mos.) | No |

Subject Comments: Subject is located in a neighborhood with similar style and valued homes. Subject has no visible signs of any repairs. Values have (See Addendum)

## Comparable Information

| | Subject | Sale 1 | Sale 2 | Sale 3 | Listing 1 | Listing 2 | Listing 3 |
|---|---|---|---|---|---|---|---|
| Address | 115 SALEM ST APT 14 , 02113 | 25 CLARK ST U: 8 , 02109 | 138 PRINCE STREET U: 2 , 02113 | 183 ENDICOTT STREET U: 2 , 02113 | 84 BUNKER HILL ST U: 2 , 02129 | 162 ENDICOTT U: 3 , 02113 | 31 IRVING ST U: 4 , 02114 |
| Proximity | - | 0.16 Miles | 0.16 Miles | 0.16 Miles | 0.90 Miles | 0.04 Miles | 0.63 Miles |
| DataSource | Tax Records | MLS:72686774 | MLS:72652070 | MLS:72631769 | MLS:72738687 | MLS:72766904 | MLS:72788553 |
| HOA | $226 | $223 | $209 | $117 | $200 | $150 | $347 |
| Fair Market Rent | $2,800 | $2,600 | $2,600 | $2,800 | $2,800 | $2,800 | $2,800 |
| Sale Type | - | Arms Length | Arms Length | Arms Length | Arms Length | Arms Length | Arms Length |
| Orig List Price | - | $589,000 | $499,000 | $585,000 | $585,000 | $575,000 | $565,000 |
| Current List Price | - | | | | $575,000 | $555,000 | $565,000 |
| Orig List Date | - | 07/08/2020 | 05/06/2020 | 03/11/2020 | 10/07/2020 | 12/14/2020 | 02/22/2021 |
| Sale Price | - | $500,000 | $521,000 | $530,000 | | | |
| Concessions | - | $0 | $0 | $0 | | | |
| Sale Date | - | 10/20/2020 | 06/05/2020 | 05/11/2020 | | | |
| Financing | - | Conventional | Conventional | Conventional | | | |
| DOM | - | 104 | 30 | 61 | 174 | 106 | 36 |
| # of Units | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Style | Condo Low-rise | Condo Low-rise | Condo Low-rise | Condo Low-rise | Condo Low-rise | Condo Low-rise | Condo Low-rise |
| Lot Size | 0.01 acres | 0.01 acres | 0.01 acres | 0.01 acres | 0.01 acres | 0.01 acres | 0.01 acres |
| View | Neighborhood | Neighborhood | Neighborhood | Neighborhood | Neighborhood | Neighborhood | Neighborhood |
| Condition | Average | Average | Average | Average | Average | Average | Average |
| Year Built | 1920 | 1915 | 1915 | 1920 | 1920 | 1918 | 1918 |
| Total Room Count | Rms/Bds/Full/Half 4/2/1/0 | Rms/Bds/Full/Half 4/2/1/0 | Rms/Bds/Full/Half 4/2/1/0 | Rms/Bds/Full/Half 4/2/1/0 | Rms/Bds/Full/Half 4/2/1/0 | Rms/Bds/Full/Half 5/2/1/0 | Rms/Bds/Full/Half 4/2/1/0 |
| Above Grade Sq Ft | 543 | 601 | 696 | 545 | 595 | 617 | 450 |
| Basement SF | 0 | 1 | 1 | 1 | 1 | 1 | 1 |
| % Basement Finish | - | Unfinished | Unfinished | Unfinished | Unfinished | Unfinished | Unfinished |
| Garage/Carport | 0 None | 0 None | 0 None | 0 None | 0 None | 0 None | 0 None |
| Pool/Spa | No | No | No | No | No | No | No |
| Amenities | - | - | - | - | - | - | - |
| Best Sale/List | | X | | | | | X |
| Adjustment for Differences | - | $0 | $0 | $0 | $0 | $3,500 | $0 |
| Adjusted Price | - | $500,000 | $521,000 | $530,000 | $575,000 | $558,500 | $565,000 |
| SP / GLA Per SF | $930.02 | $831.95 | $874.16 | $972.48 | $966.39 | $899.51 | $1,255.56 |

## Comparable Comments (See Page 3)

## Marketing Strategy

| | | | |
|---|---|---|---|
| 30 Day As Is | $500,000 | 30 Day Repaired | $500,000 |
| 90 - 120 Days "As Is" | $505,000 | 90 - 120 Days "Repaired" | $505,000 |
| As-Is List Price | $510,000 | Repaired List Price | $510,000 |
| Estimated Repairs | $0 | (See following page for repair details) | |

CF006 2450

00241485000363020400

0023990799



Account #: 0013990799 - Order #: 5127240                                                    Page: 2

## Subject & Neighborhood Information

|  | Zoning: | Condo | Current Use: | Condo | HOA Fee: | $226 |
|---|---|---|---|---|---|---|
|  | Zoning Code: | residential | Projected Use: | Condo | HOA Amenities: | Water, Maintenance, Snow Removal |
| Neighborhood Comment |  | Subject is located in a neighborhood with similar style and valued homes. Values have been steadily stable. Estimated % of REO Homes: 1%-10%. |  |  |  |  |
| Environmental Issues |  | No |  |  |  |  |
| Functional or Economic Obsolescence |  | No |  |  |  |  |
| Positive / Negative Features |  | Subject is located in a conforming neighborhood with homes of similar style and age. |  |  |  |  |
| Sewer |  | Public |  |  |  |  |
| Water |  | Public |  |  |  |  |

## Repairs – Exterior

| Item | | Description | Estimated Cost |
|---|---|---|---|
| 1. Exterior Finish | - |  | $0 |
| 2. Painting | - |  | $0 |
| 3. Windows | - |  | $0 |
| 4. Roof | - |  | $0 |
| 5. Structural | - |  | $0 |
| 6. Landscaping | - |  | $0 |
| 7. Outbuildings | - |  | $0 |
| 8. Debris Removal | - |  | $0 |
| 9. Utility | - |  | $0 |
| 10. Other | - |  | $0 |
| **Grand Total for Cost of Repairs** | | | **$0** |

## Quality Control Review

| Item | Quick Sale | 90 - 120 Day |
|---|---|---|
| Field "As Is" Price | $500,000 | $505,000 |
| "As Is" Price Adjusted by Quality Control | - | - |
| Field "Repaired" Price | $500,000 | $505,000 |
| "Repaired" Price Adjusted by Quality Control | - | - |

### Quality Control Comment

This report has passed automated quality control criteria and photo qc review.

### Map Comments

This report has passed automated quality control criteria and map qc review.

## Purpose

The purpose of this analysis is to provide a probable sale price of the subject property. This analysis is not to be used in lieu of an appraisal for the purpose of determining whether to approve a mortgage loan. Nothing in this report should be construed as a guarantee of value or condition of the subject property. This analysis is not an appraisal and has not been performed in accordance with the Uniform Standards of Professional Appraisal Practices. This report is for the internal use of the name client listed above, and is to assist with mortgage due diligence and internal decision-making processes. It will not be used for loan origination.

CF005 2490                                                                      0013990799

Account #: 0023990799 - Order #: 5127240

Page: 3

## Addendum

1. **Subject Comments** - Subject is located in a neighborhood with similar style and valued homes. Subject has no visible signs of any repairs. Values have been steadily stable. Zoning: Condo.

Property Type: Vendor agrees with the provided property characteristics.
# of Units: Vendor agrees with the provided property characteristics.
Lot Size (Ac.): Vendor agrees with the provided property characteristics.
Year Built: Vendor agrees with the provided property characteristics.
Room Count: Vendor agrees with the provided property characteristics.
Bed Count: Vendor agrees with the provided property characteristics.
Bath Count: Vendor agrees with the provided property characteristics.
Living Sq.Ft.: Vendor agrees with the provided property characteristics.
Basement (Y/N): Vendor agrees with the provided property characteristics.

2. **Sale 1 Comments** - Similar: Living in the North End has never looked so good! Tucked away, right off vibrant Hanover St, this sun filled 4th floor walkup features the charm of a brownstone with recent upgrades for a perfect turn key home! Super-efficient layout with 2 well sized bedrooms with abundant closet space. The corner kitchen w/ stainless steel appliances, granite counters and dishwasher allows for an open living / dining room. Hardwood floors throughout. Meticulously maintained common areas; professionally managed. Highly desirable pedestrian friendly neighborhood just minutes to all the North End, Waterfront and Downtown has to offer. The Boston Public Market, historic Haymarket, Faneuil Hall, Boston Harbor water taxis and so much more!

3. **Sale 2 Comments** - Similar: two bedroom in the heart of the the historic North End of Boston. The property is located just a short walk to the Financial District, Faneuil Hall, Charlestown and North Station. The condo has fresh paint and refinished hardwood floors throughout and a new kitchen. All new recessed lighting and hot water heater. There is common laundry on-site and storage in the basement. Garage parking is available at the end of the street. This condo is turn key and ready for you to move in. Come check out this beautiful condo in a great location just across the street from the park on Prince Street.

4. **Sale 3 Comments** - Similar: Classic North End 2 Bedroom 1 Bath located on historic Endicott Street! This move-in ready property features a modern kitchen, stainless appliances and adjacent living space offering beautiful exposed brick. A nicely finished full bath, hardwood floors and fresh paint complete this lovely condo that feels more spacious than its actual square footage. 183 Endicott is a 4 unit building in close proximity to the best of what Boston has to offer including the North End's charming eateries/shops and short distance to North Station, Financial District Offices, Boston Harbor and all major highways. Fantastic Opportunity for investor or owner occupant - low condo fee of $117/mo. Option for laundry to be installed in-unit! This home is being sold as-is.

5. **Listing 1 Comments** - Similar: Beautiful 2 bed/ 1 bath condo with deeded private off-street parking located in highly sought after Charlestown! This home features hardwood floors, 9 ft. ceilings, stainless steel appliances, granite countertops, a newly remodeled bathroom, a spacious private deck, deeded basement storage and much more! Walking distance to Main Street, the Navy Yard, and the North End, or catch a route 93 MBTA bus for direct access to Haymarket and State Street. This is a true gem in a small, owner-operated Condo Assoc. with low fees that wont last long!

6. **Listing 2 Comments** - Similar: NEW PRICE!!! 2 bedroom /1bath in a great area just off the North End Business district. Classic North End building with attractive entrance, original period wainscoting. This interesting layout is just waiting for your personal makeover. Sunny, front-facing, floor through unit, with eat-in-kitchen. Exposed brick and French doors. 2nd bedroom has an extra study/closet. Could be one office and an exercise room. Lots of windows. Self managed association. Walking distance to Financial District, Govt Center, MGH Medical area, Haymarket, North Station and the exciting transformation of the new waterfront recreation area. Great for a working from home couple -- 2 separate office areas! Create value and comfort with your personal upgrades.

7. **Listing 3 Comments** - Similar: Beautiful Sunny Two bedroom on Beacon Hill. Gleaming hardwood floors. Eat in kitchen. Basement used for extra storage and common laundry. Great location, close to MGH, government offices, mass transit ("T"). Pets welcome! An excellent opportunity for an affordable Beacon Hill property. Don't miss out!

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** This report is subject to following assumptions and limiting conditions:
1. Assumes that the title is good and marketable and will not render any opinions about the title.
2. Assumes both tax and MLS data is current and accurate.
3. The preparer is not a surveyor, he or she makes no guarantees, express or implied, regarding accuracy of the properties boundaries, nor any special designations, such as Special Flood Hazard Areas.
4. For exterior inspections, the agent has investigated all resources available such as MLS, public records, online data, prior inspections, and information provided by the client to identify the physical characteristics, which includes the interior condition, of the subject property. If reliable information is discovered about the interior condition that is or is not consistent with the exterior condition, then the agent has incorporated that information into their report. Otherwise, the agent has made an assumption that the interior condition of the property is consistent with the observed exterior condition.
5. The report notes any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she become aware of during the research involved in performing this report. Unless otherwise stated in this report, there is no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, need repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The preparer will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the preparer is not an expert in the field of environmental hazards, this report must not be considered as as environmental assessment of the property.
6. The as "Repaired" conclusion is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

This document was created by an independent agent for RRReview. The following methodology was used with consideration for RRReview policies and any specific client requirements.
**Data Collection:** Public and/or private data was collected and analyzed, including but not limited to all available tax documentation and MLS data, to determine neighborhood characteristics, local market conditions, use, zoning, tax assessments, physical characteristics, transaction history and past or current listing information. Information was then gathered on six other properties that are comparable to the subject property in location, use and dominant features; three that have been recently sold and three that are currently listed for sale.
**Site Inspection:** Per the client instructions, the subject property and surrounding neighborhood were inspected and photographed. This inspection may have been of the interior and/or exterior based on the inspection type. The inspection included a review for the condition of the dwelling, improvements, and any other positive or negative features. Any known environmental issues or functional or economic obsolescence are also taken into consideration.
**Reconciliation:** The collected data was then compiled with information collected from the site inspection and compared to the information from the selected comparables. The properties were compared to the subject using the sales comparison approach, which is primarily based upon the principle of substitution. The property condition, market conditions and any other noted positive or negative influences were also considered. The analysis resulted as a single figure or a range of values, as ordered by the client.
**Reporting:** The summary of the results and the data collection, site inspection and reconciliation were provided on the appropriate report form as ordered by the client.

Please note: Certain state and federal laws may prohibit and/or restrict a real estate licensee who estimates the price/value of real property or may restrict the types of transactions for which the real estate licensee's report can be used. You may wish to confirm with your legal advisor to ensure that this report is used for an appropriate purpose, as set forth in applicable state and federal law.
Certifications:
The agent and or broker has certified that they are covered by errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of this report.
The agent and or broker who executed this report has no existing or contemplated interest in the subject property.



Account #: 0023990799 - Order #: 5127240

Page: 4



Subject Property Front View - 115 Salem St Apt 14 , 02113



Subject Property Left Side View



Subject Property Right Side View



Subject Address Verification



Subject Street Scene



Subject Miscellaneous

Account #: 0123990799 - Order #: 5127240

Page: 5







CF006 2450

0024148500363040400

0023990799

Account #: 0023990799 - Order #: 5127240                                    Page: 5



| Legend | Property | Distance | Street |
|---|---|---|---|
| | Subject | 0 Miles | 115 Salem St Apt 14 , 02113 |
| | Sale 1 | 0.16 Miles | 25 Clark St U: 8 , 02109 |
| | Sale 2 | 0.16 Miles | 138 Prince Street U: 2 , 02113 |
| | Sale 3 | 0.16 Miles | 183 Endicott Street U: 2 , 02113 |
| | Listing 1 | 0.90 Miles | 84 Bunker Hill St U: 2 , 02129 |
| | Listing 2 | 0.04 Miles | 162 Endicott U: 3 , 02113 |
| | Listing 3 | 0.63 Miles | 31 Irving St U: 4 , 02114 |

**Agent Information**

Prepared By Agent: Richard Peterson
Agent Email: richard@richwaynerealty.com
Broker: Richard Peterson
Distance to Subject: 11.55 miles
Electronically Signed: 3/30/2021 11:03:00 PM

Agent Phone: (617) 868-4676
License Number: 9510650
Expiration Date: 4/13/2021
Years Experience: 10

**Legal Disclaimer**

Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of market value of the subject property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.

© 2010 Residential RealEstate Review, all rights reserved.



**DYE CULIK** PC

Champion Your Rights®

101 FEDERAL ST., SUITE 1900
BOSTON, MA 02110

6000 FAIRVIEW RD., SUITE 1200
CHARLOTTE, NC 28210

P 800.704.4214
F 800.704.6595

May 20, 2021

**EXHIBIT**

**11**

VIA USPS CERTIFIED MAIL AND FAX (630) 282-7548

Select Portfolio Servicing, Inc.
P.O. Box 65277
Salt Lake City, UT 84165-0277

Certified Article Number

9314 8699 0430 0082 7548 88

SENDER'S RECORD

**RE:    Notice of Error – Inaccurate Property Valuation**
**Steven C. Fustolo, Loan No. 23990799**
**115 Salem St., Unit 14, Boston, MA 02113**

Dear Sir or Madam:

As you know from prior correspondence, this office represents the above borrower, Steven C. Fustolo. Please continue to direct any communications to my office. This is a dispute regarding the valuation of the property. I hereby request that you correct the property valuation as is your obligation under the Real Estate Settlement Procedures Act ("RESPA").

Mr. Fustolo has obtained the enclosed Broker Price Opinion for Unit 13 in the building, which has almost exactly the same condition as Unit 14, and which states that the value is actually **$350,000**. (Enclosed as **Exhibit 1**.) Units 13 and 14 are adjacent to one another and identical in terms of disrepair and layout. This valuation is as close as can possibly be estimated, and is certainly more accurate than the valuation of SPS. The BPO was provided by Giancarlo Tiberi, the President of Core Property Group, located at 278 North Street in Boston. His realty office is located squarely in the North End of Boston, where the subject property is located. Mr. Tiberi has years of experience buying and selling properties in this neighborhood, and noted that "[t]he entire unit is in disrepair and needs substantial renovations."

SPS's valuation of the property is inaccurate for multiple reasons. On April 2, 2021, SPS provided a "valuation report" to Fustolo stating that the value of the property is between **$500,000 and $510,000.** This is far higher than the value from Mr. Tiberi. The valuation was provided to SPS by Richard Peterson, a realtor with Rich Wayne Realty in Boston.

The most prominent error appears to be Mr. Peterson's apparent "backing in" of the $500,000 to $510,000 dollar values for each unit, presumably because that is the value that SPS wants. In comparing Mr. Peterson's information for the "Subject" in each of his valuations of Mr. Fustolo's properties, Mr. Peterson identifies the significant difference in square footage of each unit, and simply changes the "Adjusted Price SF/GLA Per SF" to make each Unit worth $500,000 to $510,000 dollars.

For example, Unit 14 at the same address (which is also owned by Mr. Fustolo and which SPS also provided a valuation of) has 543 square feet and Mr. Peterson claims that the price per square foot is $930.02, which comes to a value of $505,000.86 dollars. Unit 13 has 506 square feet and Mr. Peterson claims that the price per square foot is $998.02 dollars (almost 10% difference in value for units located adjacent to one another and in the same condition) which comes out to a value of $504,998.12 dollars.

Clearly, such an evaluation, at the very least, does not pass scrutiny.

Mr. Peterson also misrepresented multiple aspects of the property. Under his "Statement of Assumptions and Limiting Conditions" Addendum, Mr. Peterson states in paragraph 5: "Unless otherwise stated in this report, there is no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, need repairs, deterioration, the presence of hazardous wastes, toxic warranties, express or implied) ...."

The comps Peterson used are not comparable at all. The valuation does not make the distinction among the comps used. Therefore, it is likely that most, if not all of the comps used were within buildings that are warrantable and therefore, eligible for traditional government-backed mortgage financing at lower rates. Indeed, it is located in a building consisting of mostly rental units and is unwarrantable for a prospective buyer who needs conventional government-backed financing.

Under Mr. Peterson's Addendum, he references the details of what he claims are comparable sales and listings, stating as follows. Peterson's assertations are flatly false – the comparisons are all to recently renovated condominiums, whereas Unit 14 has significant problems.

2

- **Sale 1 Comments** (in pertinent part): "2 well sized bedrooms with abundant closet space. The corner kitchen w/ stainless steel appliances, granite counters and dishwasher … Hardwood floors throughout, meticulously maintained common areas."

- **Sale 2 Comments** (in pertinent part): "two bedrooms … fresh paint and refinished hardwood floors throughout and a new kitchen … Garage parking available … This condo is turn key and ready to move in …."

- **Sale 3 Comments** (in pertinent part): "two bedroom … nicely finished full bath, hardwood floors and fresh paint …."

- **Listing 1 Comments** (in pertinent part): "2 bedroom … with deeded private off-street parking … hardwood floors, 9 ft. ceilings, stainless steel appliances, granite countertops, a newly remodeled bathroom, a spacious private deck, deeded basement storage …."

- **Listing 2 Comments** (in pertinent part): "2 bedroom … front facing floor through unit, with eat-in-kitchen. Exposed brick and French doors. 2nd bedroom has an extra study/closet … high ceilings."

- **Listing 3 Comments** (in pertinent part): "two bedroom … hardwood floors. Eat in kitchen. Basement used for extra storage …."

These purported comparisons are inaccurate because Mr. Fustolo's property is in need of substantial renovations and is not comparable to these properties. Instead, Mr. Peterson has baldly asserted comparisons that are inaccurate, misleading, and sorely overvalue the property.

Moreover, the condition of the property is poor at best, when Mr. Peterson listed it as "average." How Mr. Peterson could have known is a mystery, since he never went inside the building.

The rental value stated by Mr. Peterson, $2,800, is also inflated. The most the unit has rented for is $1,800 due to the conditions mentioned above.

In short, the entire valuation conducted by Mr. Peterson is based on flawed premises, lack of information, and wishful thinking.

3

It is vitally important that you correct this error. <u>First</u>, it is important because of the extreme disparity in the value SPS has used and the actual fair market value. SPS's value is over 65% higher than the actual value. <u>Second</u>, it is important to correct the value because Mr. Fustolo intends on applying for loss-mitigation options. The value of the property is a significant factor in most such applications so the value must be corrected for this reason, too.

Please correct this error and use the value we have provided in the enclosed Broker Price Opinion. This request is made pursuant to Regulation X, 12 C.F.R. § 1024.35. If you assert that no error occurred, I request that you provide within 15 days, at no charge, all documents and information you relied upon in support of your assertion. *See* Reg. X, 12 C.F.R. § 1024.35(e)(4).

Thank you for taking the time to acknowledge and respond to this correspondence as is your duty under RESPA.

Sincerely,

Joe Dye Culik
Attorney at Law
Direct: (800) 704-4214 x44
jc@dyeculik.com


Encl.

4



May 7, 2021

BPO
115 Salem unit 13
Boston, MA 02113

Steven,
In my professional opinion 115 Salem Street unit 13 in Boston, MA 02113 is worth
$350,000. The entire unit is in disrepair and needs substantial renovations. The opinion of
value reflects the condition.

Thank you,

Giancarlo Tiberi
Core Property Group
44 North Bennet Street
Boston, MA 02113
Phone: 617-909-9191
Fax: 857-991-1206
zbarron@bostoncpg.com



 **SELECT** *Portfolio* **SERVICING, inc.**

 Sign up for paperless delivery at www.spservicing.com

Paperless

May 27, 2021

RECEIVED JUN 08 2021

JOE DYE CULIK
DYE CULIK PC
101 FEDERAL ST
SUITE 1900
BOSTON, MA 02110

| | |
|---|---|
| **Account Number:** | 0023990799 |
| **Customer Name:** | STEVEN C FUSTOLO |
| **Property Address:** | 115 SALEM STREET |
| | UNIT 14 |
| | BOSTON, MA 02113 |

**EXHIBIT 12**

Dear JOE DYE CULIK:

SPS received your recent inquiry(ies) on 05/25/2021. We will review your request(s) and route to the appropriate department for handling. If a response is required, one will be provided to you within 30 days from the date we received your inquiry(ies).

SPS is committed to home retention and offers many assistance options designed for customers who are experiencing temporary or permanent hardship. These options are offered at no cost to our customers and may include special payment arrangements, structured repayment plans, or loan modifications. If you are experiencing a financial hardship, please call us as soon as possible at the number listed below to discuss your situation and options that may be available to you.

At SPS, any of our Customer Care Experts can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact SPS. Our toll-free number is 800-258-8602 and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**



00244432000063010100



**SPS** SELECT *Portfolio* SERVICING, inc.

Sign up for paperless delivery at www.spservicing.com

Paperless

May 27, 2021

 JOE DYE CULIK
DYE CULIK PC
101 FEDERAL ST
SUITE 1900
BOSTON, MA 02110

| | |
|---|---|
| **Account Number:** | 0023990781 |
| **Customer Name:** | STEVEN C FUSTOLO |
| **Property Address:** | 115 SALEM STREET |
| | UNIT 13 |
| | BOSTON, MA 02113 |

Dear JOE DYE CULIK:

SPS received your recent inquiry(ies) on 05/25/2021. We will review your request(s) and route to the appropriate department for handling. If a response is required, one will be provided to you within 30 days from the date we received your inquiry(ies).

SPS is committed to home retention and offers many assistance options designed for customers who are experiencing temporary or permanent hardship. These options are offered at no cost to our customers and may include special payment arrangements, structured repayment plans, or loan modifications. If you are experiencing a financial hardship, please call us as soon as possible at the number listed below to discuss your situation and options that may be available to you.

At SPS, any of our Customer Care Experts can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact SPS. Our toll-free number is 800-258-8602 and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**



0024443200011501 0100



**June 25, 2021**

Sign up for paperless delivery
at www.spservicing.com

Paperless

RECEIVED JUL 07 2021

JOE DYE CULIK
DYE CULIK PC
101 FEDERAL ST
SUITE 1900
BOSTON, MA 02110

**EXHIBIT**
**13**

| | |
|---|---|
| **Account Number:** | 0023990799 |
| **Property Address:** | 115 SALEM STREET |
| | UNIT 14 |
| | BOSTON, MA 02113 |

Dear JOE DYE CULIK:

SPS received your recent inquiry(ies) on 05/18/2021. We are in the process of completing our research of the issue(s) identified in your correspondence and expect to provide a response to you within the next fifteen business days. We apologize for the delay.

If you have any questions, your assigned Relationship Manager, Tanner Strong, can be reached toll free at (888) 818-6032 x 38865 or by email at Relationship.Manager@spservicing.com.

At SPS, any of our Customer Care Experts can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact SPS. Our toll-free number is 800-258-8602 and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**



# ℓ DYE CULIK PC

### Champion Your Rights®

101 FEDERAL ST., SUITE 1900
BOSTON, MA 02110

6000 FAIRVIEW RD., SUITE 1200
CHARLOTTE, NC 28210

P 800.704.4214
F 800.704.6595

May 12, 2021

VIA USPS CERTIFIED MAIL

Select Portfolio Servicing, Inc.
P.O. Box 65277
Salt Lake City, UT 84165-0277

**Certified Article Number**
9314 8699 0430 0082 4342 09
**SENDER'S RECORD**

**EXHIBIT 14**

**RE:    Qualified Written Request – Steven Fustolo, Loan No. 23990799**
**115 Salem St., Unit 14, Boston, MA 02113**

Dear Sir or Madam:

This office represents the above-referenced borrower. Please note the enclosed authorization on the account and direct any further communication about the account to me.

Select Portfolio Servicing, Inc. ("SPS") has committed the following errors in the process of servicing this mortgage. SPS has provided inaccurate information as to the character and legal status of the loan, has provided inaccurate information as to the total amount due and the date for which the loan is due, and has falsely asserted that the loan may be subject to acceleration.

Please correct the above errors. This request is made pursuant to Regulation X, 12 C.F.R. § 1024.35. If you assert that no error occurred, I request that you provide within 15 days, at no charge, all documents and information you relied upon in support of your assertion. *See* Reg. X, 12 C.F.R. § 1024.35(e)(4).

I also request the following information about the loan. This information will provide my client with more information about the loan and will assist with any loss-mitigation efforts. As the Consumer Financial Protection Bureau has stated, it is critical that borrowers have information available regarding loss-mitigation options. These requests have been narrowly tailored to seek only information that is directly relevant to this account.

1. **Loan origination file.** Please provide the complete loan origination file for this loan, including the loan application and HUD1 statement.

2. **Payoff.** Please provide a payoff that is good for a date within two weeks of the date you receive this letter. This information must be provided within five business days. *See* M.G.L. ch. 183, § 54D.

3. **Identity of owner of mortgage.** Please provide the full name, address, and other relevant contact information for the owner or assignee of the mortgage loan. This information must be provided within 10 business days. *See* Reg. X, 12 C.F.R. § 1024.36(d)(2)(i)(A).

4. **Account history.** Please provide a complete loan history, from inception to the current date, and itemize each entry and include a list of explanatory codes. This request is made in order to determine the amount due, any amounts overdue, and accrued charges.

5. **All servicing transfer statements.** These documents should already be in your possession as they are required under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(b).

6. **All notices sent pursuant to M.G.L. ch. 244, §§ 35A and 35B.** These are the notices that inform borrowers of their right to cure a default to obtain loss-mitigation assistance.

7. **All notices of acceleration.**

8. **All notices of default.**

9. **Mortgage assignments.** Pursuant to M.G.L. ch. 244, § 14, assignments are not required to be recorded until late in the foreclosure process. Please provide any assignments.

10. **Indorsements or transfers of the note.** Under Massachusetts law, a mortgagee may not foreclose unless it holds the borrower's note. Please provide a copy of the front and back of note with any indorsements and allonges.

2

3

Your obligation in responding to this letter is to conduct a reasonable search and either provide the requested information or provide the basis for any determination that the information is unavailable. Information may be deemed unavailable only if it is not in your control or possession, or it cannot be retrieved in the ordinary course of business through reasonable efforts. In any case, you must also provide provides contact information, including a telephone number, for further assistance.

Finally, please ensure that your organization directs all communications in connection with this account to my office, and that it you are otherwise in compliance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Massachusetts Consumer Protection Act, M.G.L. ch. 93A. Thank you for taking the time to acknowledge and respond to this correspondence.

Sincerely,

Joe Dye Culik
Attorney at Law
Direct: (800) 704-4214 x44
jc@dyeculik.com

Encl.
cc:     Steven Fustolo

3

# DYE CULIK PC

## THIRD-PARTY AUTHORIZATION AND
## NOTICE OF ATTORNEY REPRESENTATION

**Borrower Name(s):** Steven C. Fustolo

**Property Address:** 115 Salem St., Unit 14, Boston, MA 02113

**Mortgage Servicer:** SPS

**Mortgage Account Number:** 0023990799

I/we authorize the following to receive, obtain, share, release, discuss, and otherwise provide to and with each other public and private personal information contained in or related to this account.

I/we indemnify and hold harmless any third party from all claims from providing, receiving, or relying on such information. This law firm represents me/us with respect to the above account(s). Please note this in the file for future reference.

I/we notify you that all further communications relative to this account should be addressed to my/our below attorney.

**DYE CULIK PC**
**101 Federal St., Suite 1900**
**Boston, MA 02110**
**(617) 830-1795**

Including:
- **Joe Dye Culik**
- **Chad Davidson**
- **Talia Semaan**
- **Any other representative.**

Borrower(s) Signatures:

_____
SIGN

Steven C. Fustolo
_____
PRINT

XXX-XX- 4889
_____
LAST 4 DIGITS OF SSN

May 4, 2021
_____
DATE

_____
SIGN

_____
PRINT

XXX-XX-
_____
LAST 4 DIGITS OF SSN

_____
DATE

RECEIVED JUL 09 2021



**SPS | SELECT Portfolio SERVICING, inc.**

Sign up for paperless delivery
at www.spservicing.com

Paperless

May 20, 2021

STEVEN C FUSTOLO
110 CHURCH ST
WINCHESTER, MA 01890

| | |
|---|---|
| **Account Number:** | 0023990799 |
| **Property Address:** | 115 SALEM STREET |
| | UNIT 14 |
| | BOSTON, MA 02113 |

**EXHIBIT 15**

Dear STEVEN C FUSTOLO:

SPS acknowledges receipt of your correspondence which was received on 05/18/2021 regarding the above referenced account. In your correspondence, you requested information regarding the name of the "owner" of the account, sometimes also referred to as the "investor," "creditor," and/or "note holder."

Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Seasoned Credit Risk Transfer Trust, Series 2019-2 is the owner of the account, and SPS is the mortgage servicer of the account. Contact information for the owner of the account is provided below:

SCRT 2019-2
1551 Park Run Drive
McLean, VA 22102
800-373-3343

The information provided above is based upon a review of our records as of the date of this letter. Account ownership status may change from time to time.

As the mortgage servicer, SPS is authorized to collect all payments and administer the terms of the note and security instrument. Questions or disputes regarding the account and any requests for mortgage assistance should be directed to SPS in order to ensure a timely response and resolution.

SPS is committed to home retention and offers many assistance options designed for customers who are experiencing temporary or permanent hardship. These options are offered at no cost to our customers and may include structured repayment plans, mortgage modifications, or account settlement alternatives. If you are experiencing a financial hardship, please call us as soon as possible to discuss your situation and the options that may be available to you.

If other items were raised in your correspondence, they will be addressed under separate cover.

If you have any questions or concerns, please contact SPS directly at 800-258-8602. Representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

AD411 2475                    00244114000256010100                    0023990799

AD999 1104                                                            0023990799

*Fustolo*

# NOTE

LOAN #:07120074
100310800071200741

JANUARY 10TH, 2008          BRAINTREE                    MA
[Date]                      [City]                       [State]

115 SALEM STREET UNIT #14, BOSTON, MA  02113
(Property Address)

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $   283,500.00    (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is   UNION CAPITAL MORTGAGE BUSINESS TRUST

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of     7.125      %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the  1ST      day of each month beginning on   MARCH 1ST, 2008       . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on  FEBRUARY 1ST, 2038     , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."
I will make my monthly payments at  45 BRAINTREE HILL PK., STE 400, BRAINTREE,  MA 02184
                                              or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $       1,910.00  .

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N (0207)          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                         *by mrs*

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    3.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-6N (3201)                          Page 2 of 3                          Form 3200 1/01



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Steven C. Fustolo_ by Marcy Breivzel Attorney-in-fact ___(Seal)
STEVEN C. FUSTOLO          -Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

[Sign Original Only]

-6N (0107)          Page 3 of 3          Form 3200 1/01

AD999 1104          0023990799

Date Filed 12/30/2022 1:49 PM
Superior Court - Suffolk
Docket Number

**13-12692** Steven C. Fustolo
**Case type:** bk **Chapter:** 7 **Asset:** Yes **Vol:** i **Judge:** Janet E. Bostwick
**Date filed:** 05/06/2013 **Date of last filing:** 11/23/2022

# Case Summary

| | |
|---|---|
| **Office:** Boston | **Filed:** 05/06/2013 |
| **County:** MIDDLESEX-MA | **Terminated:** |
| | |
| **Fee:** Paid | **Debtor discharged:** |
| **Origin:** 0 | **Reopened:** |
| **Previous term:** | **Converted:** |
| | **Debtor dismissed:** |
| **Joint:** n | **Confirmation hearing:** |
| **Original chapter:** 7 | |
| **Current chapter:** 7 | |

**EXHIBIT 16**

**Nature of debt:** consumer
**Related adversary proceedings:** 14-01193,14-01222,15-01015
**Pending status:** ,Awaiting Closing
**Flags:** NTCAPR, CredAdd, ASSET, 727OBJ, ADVPEND, DISCDENY

**Trustee:** Harold B. Murphy   **City:** Boston   **Phone:** 617-423-0400 **Email:** mxc@hanify.com

**Trustee:** John Fitzgerald   **City:** Boston   **Phone:** **Email:** USTPRegion01.BO.ECF@USDOJ.GOV

**Party 1:** Fustolo, Steven C.   (Debtor)
    SSN / ITIN: xxx-xx-4889

**Atty:** Lane N. Goldberg   **Represents party 1:** Debtor   **Phone:** 617-328-0006
    **Fax:** 617-328-0007
    **Email:** lane@goldberglawma.com

**Atty:** William R. Moorman Jr.   **Represents party 1:** Debtor   **Phone:** 617-423-0400
    **Email:** wmoorman@psh.com

**Atty:** David M. Nickless   **Represents party 1:** Debtor   **Phone:** (978) 342-4590
    **Fax:** (978) 343-6383
    **Email:** dnickless@npolegal.com

**Location of case files:**
    **Volume:** CS1
The case file may be available.

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/29/2022 22:02:55 | | |
| **PACER Login:** joedyeculik | **Client Code:** | potential clients |
| | | |

Date Filed 12/30/2022 1:49 PM
Superior Court - Suffolk
Docket Number

11/29/22, 10:02 PM   LIVE Database

| Description: | Case Summary | Search Criteria: | 13-12692 |
| Billable Pages: | 1 | Cost: | 0.10 |

| Description: | Case Summary | Search Criteria: | 13-12692 |
| Billable Pages: | 1 | Cost: | 0.10 |

## 22 SM 003428 Federal Home Loan Mortgage Corporation, As Trustee For The Benefit Of The Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2019-2 v. Fustolo, Steven C.

- Case Type:
- Servicemembers
- Case Status:
- Closed
- File Date
- 11/14/2022
- DCM Track:
-
- Initiating Action:
- Efiled Complaint under Servicemembers Civil Relief Act
- Status Date:
- 11/14/2022
- Case Judge:
-
- Next Event:
-
-



### Property Information

115 Salem Street
Boston

---

| All Information | Party | Docket | Financial | Receipt | Disposition |

### Party Information

**Federal Home Loan Mortgage Corporation, As Trustee For The Benefit Of The Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2019-2**
- Plaintiff

**Party Attorney**
- Attorney
- Danforth, Esq., Nicholas J
- Bar Code
- 703337
- Address
- Harmon Law Offices P.C.
  150 California St
  Newton, MA  02458
- Phone Number
- (617)558-6179

More Party Information

**Fustolo, Steven C.**
- Defendant

**Party Attorney**

More Party Information

### Docket Information

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 11/14/2022 | Land Court servicemembers fee Receipt: 435908 Date: 11/14/2022 | $240.00 | |
| 11/14/2022 | Land Court surcharge Receipt: 435908 Date: 11/14/2022 | $15.00 | |
| 11/14/2022 | Efiled Complaint under Servicemembers Civil Relief Act | | 📄 Image |
| 11/14/2022 | Efiled Order of Notice | | 📄 Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 11/14/2022 | Mortgagee's Affidavit Under Chapter 206 of the Acts of 2007, filed | | Image |
| 11/14/2022 | Order of Notice for service, for recording and for publication in the Boston Globe/Herald or Mass Law.Wkly, returnable 12/26/2022, issued. | | |
| 11/14/2022 | Instruction Sheet for Order of Notice sent electronically | | Image |
| 11/14/2022 | Modified by Land Court - Efiled Order of Notice | | Image |
| 12/07/2022 | Notice Returned to Court with Service Thereon. | | Image |
| 12/07/2022 | Affidavit as to Military Service filed. | | Image |
| 12/07/2022 | Motion for Judgment filed. | | Image |
| 12/28/2022 | Motion for Judgment allowed.      (Piper, C.J.) | | |
| 12/28/2022 | Modified by Land Court - Judgment sent electronically. | | Image |
| 12/28/2022 | Motion for Judgment allowed.      (Piper, C.J.) | | |
| 12/28/2022 | Judgment Entered.    (Piper, C.J.) | | |

## Financial Summary

| Cost Type | Amount Owed | Amount Paid | Amount Dismissed | Amount Outstanding |
|---|---|---|---|---|
| Cost | $255.00 | $255.00 | $0.00 | $0.00 |
| Total | Total $255.00 | Total $255.00 | Total $0.00 | Total $0.00 |

## Receipts

| Receipt Number | Receipt Date | Received From | Payment Amount |
|---|---|---|---|
| 435908 | 11/14/2022 | | $255.00 |
| Total | Total | Total | Total $255.00 |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Judgment Entered. | 12/28/2022 | |

**SPS** SELECT Portfolio SERVICING, inc. www.spservicing.com

P.O. Box 65250
Salt Lake City, UT 84165-0250

Sign up for paperless delivery at www.spservicing.com

Paperless

**Mortgage Statement**
Statement Date: 11/14/2022
Page 1 of 5

Customer Service: (800) 258-8602
Monday - Friday    8:00AM - 9:00PM ET
Saturday    8:00AM - 2:00PM ET

*For other important information, see reverse side*

+ 2081530 000020441 1301   P2 P3 P4 P5

Steven C Fustolo
Joe Dye Culik
1200 E Morehead St Ste 220
Charlotte, NC 28204-2899

20441

| | |
|---|---|
| Account Number | 0023990799 |
| Property Address | 115 SALEM STREET UNIT 14 BOSTON MA 02113 |
| Account Due Date | 11/01/2020 |
| Payment Due Date | 12/01/2022 |
| **Payment Amount** | **$48,269.81** |

**Explanation of Payment Amount**

| | | |
|---|---|---|
| Principal | | $509.79 |
| Interest | | $800.61 |
| Escrow (Taxes and Insurance) | | $514.70 |
| **Regular Monthly Payment** | | **$1,825.10** |
| Unpaid Late Charges | | $0.00 |
| Other Charges and Fees | | $1,540.27 |
| Charges / Fees this Period | $97.00 | |
| Past Unpaid Amount(s) | | $44,904.44 |
| Unapplied Payment(s) | | $0.00 |
| **Total Payment Amount** | | **$48,269.81** |

**Account Information**

| | |
|---|---|
| Interest Bearing Principal | $319,756.13 |
| Deferred Principal | $130,581.13 |
| Outstanding Principal [1] | $450,337.26 |
| Interest Rate (Fixed) | 3.125% |
| Prepayment Penalty | No |

### Bankruptcy Message

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

### Transaction Activity (10/15/2022 to 11/14/2022)

| Date | Description | Principal Balance | Interest | Taxes & Insurance | Late Charges | Other Fees | Expenses Pd by Servicer | Total [1] |
|---|---|---|---|---|---|---|---|---|
| 10/15 | BEG BALANCE | $450,337.26 | $20,436.67 | $13,740.35 | $0.00 | $0.00 | $1,443.27 | $485,957.55 |
| 11/04 | PROP VALUATION | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 97.00 | 97.00 |
| 11/14 | ENDING BALANCE | $450,337.26 | $20,436.67 | $13,740.35 | $0.00 | $0.00 | $1,540.27 | $486,054.55 |

**EXHIBIT 18**

### Past Payments Breakdown

| | Paid Last Month | Paid Year To Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | |
| Total | $0.00 | $0.00 |
| Total Unapplied Balance | $0.00 | |

### Important Messages

All communication sent to you by SPS is always available on our website: www.spservicing.com. For faster access to written communication and documents, please log in to your customer account on our website to view.

[1] This amount is not a payoff quote. If you would like a payoff quote, please see instructions on reverse side.

Any transactions that occurred after the statement date noted above will be reflected on your next statement.

### **Account History**

**Recent Account History:**
* Payment due 11/2022: Unpaid payment of $1,825.10.
* Payment due 10/2022: Unpaid payment of $1,825.10.
* Payment due 09/2022: Unpaid payment of $1,825.10.
* Payment due 08/2022: Unpaid payment of $1,825.10.
* Payment due 07/2022: Unpaid payment of $1,812.11.
* Payment due 06/2022: Unpaid payment of $1,812.11.

**Total: $48,269.81 unpaid amount that, if paid, would bring your loan current.**

**SPS has completed the first notice or filing required to start a foreclosure.**

**If You Are Experiencing Financial Difficulty:** See the back for information about mortgage counseling or assistance. Also, there are a number of options available to assist customers who are experiencing difficulty with their payments. Please contact us immediately to discuss these options, arrange a reinstatement or address any questions regarding the statement at 1-888-818-6032.



---

**Please detach bottom portion and return with your payment. Allow 7 - 10 days for postal delivery. Please do not send cash.**

### Payment Amount

| | |
|---|---|
| Borrower Name(s) | Steven C Fustolo Joe Dye Culik |
| Account Number | 0023990799 |

**Payment Date 12/01/2022: $48,269.81**

☐ Change of address or telephone? If so, check here and note changes on back.

**Make checks payable to: Select Portfolio Servicing**

| | |
|---|---|
| Monthly Payment | $ . |
| Additional Principal | $ . |
| Additional Escrow | $ . |
| Late Fees | $ . |
| Other (Please Specify) | $ . |
| | |
| **Total Amount Enclosed** | $ |

SELECT PORTFOLIO SERVICING, INC.
PO BOX 65450
SALT LAKE CITY UT 84165-0450

2771 0023990799 0000182510 0000186441 5

## Important Mailing Addresses (Please include your account number on all correspondence)

| Regular Payments | Overnight/Express Payments | Notice of Error or Information Request or Qualified Written Request | General Correspondence | Check by Phone | Bankruptcy Correspondence & Notices must be sent to: |
|---|---|---|---|---|---|
| Select Portfolio Servicing, Inc. Attn: Remittance Processing P.O. Box 65450 Salt Lake City, UT 84165 | Select Portfolio Servicing, Inc Attn: Cashiering Dept. 3217 S. Decker Lake Dr. Salt Lake City, UT 84119 | Select Portfolio Servicing, Inc. P.O. Box 65277 Salt Lake City, UT 84165 Fax: (801) 270-7856 | Select Portfolio Servicing, Inc. P.O. Box 65250 Salt Lake City, UT 84165 | (800) 258-8602 Option 1 | Select Portfolio Servicing, Inc. Attn: Bankruptcy Dept. P.O. Box 65250 Salt Lake City, UT 84165 |

**PAYMENT INSTRUCTIONS** Paying your mortgage on time is an important obligation, so please pay on or before the payment due date. Payments are not considered paid until received and posted to your account. Please include the late charge in any payment made after the late payment due date noted on your statement. Postal delays do not result in a waiver of late charges, so please allow adequate time for mail service. If you don't pay on or before 3 p.m. MT on the payment due date, your loan will be considered delinquent. (NOTE: If you are currently sending all or part of your payment to the bankruptcy trustee, please disregard the Select Portfolio Servicing, Inc. payment address for that portion you are sending to the trustee.) We do not accept payments in cash.

**APPLICATION OF PAYMENTS** If you are current in making your payments, we will apply payments according to your Note. If you are delinquent, we apply payments to the oldest outstanding payments that are due under your Note.

**LOAN REPRESENTATIVES** If you would like to speak to someone about making a payment or payment arrangements, please call one of our loan representatives at (800) 258-8602 (Monday - Friday, 8 a.m. - 9 p.m. ET; Saturday, 8 a.m. - 2 p.m. ET).

**AUTOMATED CONVERSION OF YOUR CHECKS TO ACH DEBIT ENTRIES AND RETURNED CHECKS OR DEBITS** When you provide us a check, you authorize us to use the information from your check to make a one time Electronic Funds Transfer from your bank account. When we use your check to make an Electronic Funds Transfer, funds may be withdrawn from your account quickly, as soon as the day we receive your check. You will not receive your check back from your financial institution. If there are insufficient funds in your account we will reverse the amount of any such returned payment that we had credited to your mortgage. You authorize us to charge you a fee of up to twenty-five dollars ($25.00) as allowable by state law.

**CREDIT REPORTING** SPS furnishes information to consumer reporting agencies. You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your Note and Mortgage. If you believe such information is inaccurate, you may call Customer Service at (800) 258-8602, submit a written Notice of Error to the P.O. Box listed above, or submit a dispute with the consumer reporting agency.

**NOTICE OF ERROR OR INFORMATION REQUEST OR QUALIFIED WRITTEN REQUEST** If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent to the address listed above in the important mailing addresses section, as this is our exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal Law.

**HOUSING COUNSELOR INFORMATION** If you would like counseling or assistance, you can contact the following: U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

**SPECIAL REQUEST AND ADDITIONAL FEES**

| Check by Phone or Website (EZPay) | Up to $15.00 |
|---|---|
| Returned Check Fee | Up to $25.00 |
| Express Mail Fee | Actual Charge Incurred |

*This fee schedule does not contain all fees that may be charged for services rendered. The actual fee charged to a particular customer may be different based upon certain requirements under state law, agency guidelines (e.g., FHA, VA) or other relevant criteria.*

**LOAN PAYOFFS** Payoff information may be requested verbally by calling the Customer Service toll free number printed on this statement, by faxing your requests to (801) 269-4269 or by mailing your request to: P.O. Box 65250, Salt Lake City, UT 84165-0250. If you do not receive your payoff quote within 5 business days of placing your request, please call our Customer Service Department.

**HOME OWNER INSURANCE** You are required to maintain Homeowners Insurance (and if required, Flood Insurance), at all times during the term of your Mortgage and provide or ask your insurance agent each year to provide us copies of all renewal policies and invoices to the address shown below at least (30) days before the date your existing policy expires. It is important for you to remember that if we do not receive a copy of your renewal or replacement policy, SPS may obtain coverage to protect its interest in the property. The coverage provided for this insurance may be different and more expensive than your expired coverage. We will only do this after we have notified you of your failure to maintain coverage. It is possible we may obtain certain benefits from this insurance placement coverage.

All insurance information (including your account number) should be mailed or faxed to:
Insurance Service Center: PO Box 7277, Springfield, OH 45501 Fax (866) 801-8177.

**REAL ESTATE TAX** If you have established an escrow account with us for taxes, you should keep copies of any tax bills you receive for your personal records. We have engaged a Tax Service to receive your tax bills, and we will pay taxes out of your escrow account to the extent there are sufficient balances in your escrow account. If you receive any special assessment bills, you should send them to our Tax Service Center address shown below. Special bills include:
- An area defined as a "Homeowner Area" where your local tax office will not send us the tax bill
- Any special assessments on your property in addition to your regular Real-Estate tax bills
- Any adjustments to your tax bills

Tax Service Center: PO Box 3541, Covina, CA 91722

**SPS CONSUMER OMBUDSMAN SERVICES** If you have an unresolved issue with SPS, and you have exhausted other customer service options, please contact our Consumer Ombudsman Department at (866) 662-0035 or through other methods found on www.spservicing.com.

| COMMON ABBREVIATIONS | |
|---|---|
| INT | Interest |
| FC or F/C | Foreclosure |
| BK | Bankruptcy |
| BPO | Broker Price Opinion |
| MISC DISB | Disbursement from escrow account for other than escrow item (E.g.:Analysis Refund, Payoff Refund) |

*This common abbreviations table does not contain all abbreviations that may appear in the "Activity this Period" section. For more information please refer to the Fee Schedule and Description document located at www.spservicing.com.*

HAS YOUR ADDRESS CHANGED?  IF SO, PLEASE COMPLETE THIS FORM

Mailing Address _____

City _____ State _____ Zip _____

Home Phone _____ Business Phone _____
**All Borrower's Signature Required For Address Change**

_____
Borrower's Signature

_____
Co-Borrower's Signature

**SPS** | SELECT
Portfolio
SERVICING, inc.

P.O. Box 65250
Salt Lake City, UT 84165-0250
www.spservicing.com

Customer Service : (800) 258-8602
Monday - Friday     8:00AM - 9:00PM ET
Saturday            8:00AM - 2:00PM ET

Account Number  0023990799

## Important Messages

The Outstanding Principal balance includes the Interest Bearing Principal balance and the Deferred Principal balance. The Deferred Principal balance is not subject to the charged interest rate and will be due as a final balloon payment on the earlier of (a) payoff of the Interest Bearing Principal balance, or (b) maturity date of the mortgage loan.

Under the Servicemembers Civil Relief Act if you or a family member has been deployed to active duty, you may be eligible for certain protections regarding your mortgage loan. Please contact us at (800) 258-8602 to discuss these protections.



20441

| FACTS | WHAT DOES SELECT PORTFOLIO SERVICING, INC. DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• account balances and payment history<br>• credit history and credit scores |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Select Portfolio Servicing, Inc. ("SPS") chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does SPS share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | Yes |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes –** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes (but only through joint marketing agreements) | Yes |

| To limit our sharing | • Mail the form below<br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
|---|---|
| Questions? | Call (800) 258-8602 |



REV 05/2010

Select Portfolio Servicing, Inc.
P.O. Box 65769
Salt Lake City, UT 84165-0769

Loan Number: 0023990799

Steven C Fustolo
Joe Dye Culik
1200 E Morehead St Ste 220
Charlotte, NC  28204

### Mail-in Form

**Mark any/all that you want to limit:**

☐ Do not share my personal information with other institutions to jointly market to me.

☐ Do not share information about my creditworthiness with your affiliates for their everyday business purposes.

☐ Do not allow your affiliates to use my personal information to market to me.

☐ Do not share my personal information with nonaffiliates to market their products and services to me.

**Page 2**

## What we do

| How does SPS protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>Our computer safeguards include secure email, data encryption and network firewalls. |
| --- | --- |
| How does SPS collect my personal information? | We collect your personal information, for example, when you<br><br>• pay your bills or give us your income information<br>• provide employment information or give us your wage statements<br>• give us your contact information<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br><br>• sharing information about your creditworthiness with our affiliates for their everyday business purposes<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

## Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *Our affiliates include financial companies such as DLJ Mortgage Capital Inc., Residential RealEstate Review, Inc., Mountain West Realty Corp., and Pelatis Insurance Agency Corp.* |
| --- | --- |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial or nonfinancial companies.<br><br>• *Except for joint marketing agreements, SPS does not share with nonaffiliates so they can market to you.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• *Our joint marketing partners include mortgage lenders.* |

Please place in the envelope provided and mail to:
(PLEASE DO NOT SEND PAYMENTS TO THIS ADDRESS)

SELECT PORTFOLIO SERVICING, INC.
P.O. BOX 65769
SALT LAKE CITY, UT 84165-0769

2771 0023990799 031 B



## Personal Credit Report for Steven Fustolo

**Report Date: 02/01/2021**

**Source: TransUnion**

**File Number:** 385523701

You have been on our files since 11/01/1983

EXHIBIT
**19**

### Personal Information

**SSN:** XXX-XX-4889
Your SSN has been masked for your protection.

**Date of Birth:**        REDACTED

**Names Reported:** STEVEN C. FUSTOLO and STEVE FUSTOLO

### Addresses Reported:

| Address | Date Reported |
|---|---|
| 110 CHURCH ST, WINCHESTER, MA 01890-3521 | 04/30/2005 |
| 60 FRANKLIN VILLAGE DR, FRANKLIN, MA 02038-4000 | 01/05/2009 |
| 87 TERRACE HALL AVE, BURLINGTON, MA 01803-3410 | 04/01/2001 |
| 193 STONEHEDGE, HUNTINGTON, CT 06484-2865 | |

### Telephone Numbers Reported:

# REDACTED

### Account Information

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported.

**Rating Key**

Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Please note: Some but not all of these ratings may be present in your credit report.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repo-ssession | Charge Off | Foreclosure |

### Adverse Accounts

Adverse information typically remains on your credit file for up to 7 years from the date of the delinquency. To help you understand what is generally considered adverse, we have added >brackets< to those items in this report. For your protection, your account numbers have been partially masked, and in some cases scrambled. Please note: Accounts are reported as "Current; Paid or paying as agreed" if paid within 30 days of the due date. Accounts reported as Current may still incur late fees or interest charges if not paid on or before the due date.

# REDACTED

Date Filed 12/30/2022 1:49 PM
Superior Court - Suffolk
Docket Number
2/1/2021

Case 1:23-cv-10166-DJC     Document 1-3     Filed 01/26/23     Page 96 of 105

TransUnion Credit Report

# REDACTED

# REDACTED

**SELECT PORTFOLIO SVCG #277002399\*\*\*\***

10401 DEERWOOD PARK BV
JACKSONVILLE, FL 32256
(800) 258-8602

| | | | | | |
|---|---|---|---|---|---|
| **Date Opened:** | 01/10/2008 | **Date Updated:** | 01/19/2021 | **Pay Status:** | Current Account |
| **Responsibility:** | Individual Account | **Payment Received:** | $1,684 | **Terms:** | $1,669 per month, paid |
| **Account Type:** | Mortgage Account | **Last Payment Made:** | 04/28/2020 | | Monthly for 45 months |
| **Loan Type:** | CONVENTIONAL REAL | | | | >Maximum Delinquency of 90 days in 10/2019 |
| | ESTATE MTG | | | | for $6,061 and in 12/2019 for $6,056< |

**High Balance:** High balance of $283,500 from 01/2019 to 12/2019; $442,237 from 03/2020 to 05/2020; $442,237 from 01/2021 to 01/2021



| | 01/2021 | 12/2020 | 11/2020 | 10/2020 | 09/2020 | 08/2020 | 07/2020 | 06/2020 | 05/2020 | 04/2020 |
|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $443,869 | | | | | | | | $443,869 | $444,697 |
| Scheduled Payment | $1,669 | | | | | | | | $1,669 | $1,669 |
| Amount Paid | $1,684 | | | | | | | | $1,684 | $0 |
| Past Due | $0 | | | | | | | | $0 | $0 |
| Remarks | BAL | | | | | | | | LMN | LMN |
| Rating | OK | X | X | X | X | X | X | X | OK | OK |

| | 03/2020 | 02/2020 | 01/2020 | 12/2019 | 11/2019 | 10/2019 | 09/2019 | 08/2019 | 07/2019 | 06/2019 |
|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $443,475 | | | $442,771 | $443,160 | $443,549 | $441,161 | $439,732 | $436,160 | $436,773 |
| Scheduled Payment | $1,669 | | | $1,663 | $1,663 | $1,975 | $1,975 | $1,975 | $1,975 | $1,975 |
| Amount Paid | $1,550 | | | $1,663 | $1,663 | $0 | $0 | $0 | $1,990 | $1,990 |
| Past Due | $0 | | | $6,056 | $6,056 | $6,061 | $4,042 | $2,023 | $0 | $0 |
| Remarks | LMN | | | >PPA< | >PPA< | LMN | LMN | LMN | LMN | LMN |
| Rating | OK | X | X | 90 | 90 | 90 | 60 | 30 | OK | OK |

| | 05/2019 | 04/2019 | 03/2019 | 02/2019 | 01/2019 | 12/2018 |
|---|---|---|---|---|---|---|
| Balance | $437,467 | $437,055 | $437,692 | $438,328 | $437,987 | |
| Scheduled Payment | $1,975 | $1,975 | $1,920 | $1,920 | $1,920 | |
| Amount Paid | $1,990 | $1,935 | $1,935 | $1,925 | $1,925 | |
| Past Due | $0 | $0 | $0 | $0 | $0 | |
| Remarks | LMN | LMN | LMN | LMN | LMN | |
| Rating | OK | OK | OK | OK | OK | X |

## SELECT PORTFOLIO SVCG #277002399****

10401 DEERWOOD PARK BV
JACKSONVILLE, FL 32256
(800) 258-8602

| | | | | | |
|---|---|---|---|---|---|
| Date Opened: | 01/10/2008 | Date Updated: | 01/19/2021 | Pay Status: | Current Account |
| Responsibility: | Individual Account | Payment Received: | $1,695 | Terms: | $1,680 per month, paid |
| Account Type: | Mortgage Account | Last Payment Made: | 04/28/2020 | | Monthly for 45 months |
| Loan Type: | CONVENTIONAL REAL ESTATE MTG | | | | >Maximum Delinquency of 90 days in 10/2019 for $5,973 and in 12/2019 for $5,971< |

**High Balance:** High balance of $283,500 from 01/2019 to 12/2019; $445,038 from 03/2020 to 05/2020; $445,038 from 01/2021 to 01/2021

| | 01/2021 | 12/2020 | 11/2020 | 10/2020 | 09/2020 | 08/2020 | 07/2020 | 06/2020 | 05/2020 | 04/2020 |
|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $446,726 | | | | | | | | $446,726 | $447,565 |
| Scheduled Payment | $1,680 | | | | | | | | $1,680 | $1,680 |
| Amount Paid | $1,695 | | | | | | | | $1,695 | $0 |
| Past Due | $0 | | | | | | | | $0 | $0 |
| Remarks | BAL | | | | | | | | LMN | LMN |
| Rating | OK | X | X | X | X | X | X | X | OK | OK |

| | 03/2020 | 02/2020 | 01/2020 | 12/2019 | 11/2019 | 10/2019 | 09/2019 | 08/2019 | 07/2019 | 06/2019 |
|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $446,304 | | | $445,626 | $446,072 | $446,517 | $444,158 | $442,775 | $439,464 | $439,889 |
| Scheduled Payment | $1,680 | | | $1,674 | $1,674 | $1,946 | $1,946 | $1,946 | $1,946 | $1,946 |
| Amount Paid | $1,311 | | | $1,674 | $1,674 | $0 | $0 | $0 | $1,961 | $1,961 |
| Past Due | $0 | | | $5,971 | $5,971 | $5,973 | $3,983 | $1,993 | $0 | $0 |
| Remarks | LMN | | | >PPA< | >PPA< | LMN | LMN | LMN | LMN | LMN |
| Rating | OK | X | X | 90 | 90 | 90 | 60 | 30 | OK | OK |

| | 05/2019 | 04/2019 | 03/2019 | 02/2019 | 01/2019 | 12/2018 |
|---|---|---|---|---|---|---|
| Balance | $440,599 | $440,401 | $440,401 | $441,489 | $441,374 | |
| Scheduled Payment | $1,946 | $1,946 | $1,946 | $1,899 | $1,899 | |
| Amount Paid | $1,961 | $0 | $3,819 | $1,904 | $1,904 | |
| Past Due | $0 | $0 | $0 | $0 | $0 | |
| Remarks | LMN | LMN | LMN | LMN | LMN | |
| Rating | OK | OK | OK | OK | OK | X |

- **This is an important notice concerning your right to live in your home. Have it translated at once.**
- **Esta carta explica sus derechos legales para permanecer en su propiedad de vivienda. Por favor traduzca esta notificacion inmediatamente.**
- **Este é um aviso importante em relação ao seu dereito de morar na sua residência. Por favor, tem tradizido imediatamente.**
- **C'est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.**
- **这是一则关于您居住权的重要通知，请儘快安排翻译。**

### 90-Day Right to Cure Your Mortgage Default

September 7, 2021

EXHIBIT
**20**

BY FIRST-CLASS MAIL AND BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

STEVEN C FUSTOLO

████████████████

RE:  115 SALEM STREET, UNIT 14 BOSTON, MA 02113; loan ██████████ with Select Portfolio Servicing, Inc. (SPS), as servicer for Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Seasoned Credit Risk Transfer Trust, Series 2019-2 (c/o SPS, PO Box 65250 Salt Lake City, UT 84165-0250) (Mortgagee); Mortgage Loan Originator: Union Capital Mortgage Business Trust;

To STEVEN C FUSTOLO:

We are contacting you because you did not make your monthly loan payment(s) due on ██████████ ████████████████████ to SPS. You must pay the past due amount of ██████████ on or before December 9, 2021, which is 90 days from the date of this notice. The past due amount on the date of this notice is specified below:

- ████████ Principal & Interest due on ████████ Principal & Interest due on ████████
  Principal & Interest due on Principal & Interest due on
  Principal & Interest due on Principal & Interest due on
  Principal & Interest due on Principal & Interest due on
  Principal & Interest due on Principal & Interest due on
  Principal & Interest due on

- ████████ Outstanding Escrow Balance;

If you pay the past due amount, and any additional monthly payments, late charges or fees that may become due between the date of this notice and the date when you make your payment, your account will be considered up-to-date and you can continue to make your regular monthly payments.

Make your payment directly to:

Select Portfolio Servicing, Inc.
Attn: Cashiering Department
PO Box 65450 Salt Lake City, UT 84165-0450



LR081 2721                                    00249064000349031200

Please consider the following:

- You should contact the Homeownership Preservation Foundation (888-995-HOPE) to speak with counselors who can provide assistance and may be able to help you work with your lender to avoid foreclosure;

- If you are a MassHousing borrower, you may also contact MassHousing (617-854-1000) to determine if you are eligible for additional assistance. There may be other homeownership assistance available through your lender or servicer;

- You may also contact the Division of Banks (617-956-1500) or visit www.mass.gov/foreclosures to find a foreclosure prevention program near you;

- After December 9, 2021, you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place.  Depending on the terms of the loan, there may also be other ways to avoid foreclosure, such as selling your property, refinancing your loan, or voluntarily transferring ownership of the property to Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Seasoned Credit Risk Transfer Trust, Series 2019-2.

**If you do not pay the total past due amount o █████████ and any additional payments that may become due by December 9, 2021, you may be evicted from your home after a foreclosure sale.  If Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Seasoned Credit Risk Transfer Trust, Series 2019-2 forecloses on this property, it means the mortgagee or a new buyer will take over the ownership of your home.**

If you have questions, or disagree with the calculation of your past due balance, please contact SPS at 800-635-9698 or PO Box 65277 Salt Lake City, UT 84165-0277.

Sincerely,

Kalyana C Nimmagadda
Chief Administrative Officer
Select Portfolio Servicing, Inc.

Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

LR081 2721





September 7, 2021

STEVEN C FUSTOLO

**Account Number:**
**Property Address:**



Dear Customer(s):

SPS is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has either been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

The mortgage on the above referenced property is in default as a result of a failure to make payments as required by the Deed of Trust or Mortgage (Security Instrument). SPS services your mortgage account and has been instructed on behalf of the lien holder to pursue remedies under the Security Instrument unless action is taken to cure the default.

**Possible Consequences of Default**
If we do not receive the outstanding amount by the date listed in the notice, or some loss mitigation alternative to foreclosure has not started, SPS may initiate foreclosure and require immediate payment in full of the entire outstanding unpaid amount on the account. In other words, failure to cure the default on or before December 9, 2021 may result in acceleration of sums secured by the Security Instrument and sale of the Property. If that happens, you may lose your home. A foreclosure will result in the involuntary loss of the property via sale to the lien holder, or another person may acquire the property by means of foreclosure and sale, and you may be evicted. Once foreclosure is initiated, additional amounts for legal fees and costs may be incurred. These sums can be significant. They may be added to amounts secured by the Security Instrument, and they may be required to be paid, to the extent permitted by law, if you wish to reinstate or satisfy the lien after foreclosure is initiated.

The account's Security Instrument may contain information related to your right to reinstate the account. Please note that if the Security Instrument contains limitations with respect to when you can reinstate the account prior to a foreclosure sale, SPS is waiving those limitations and the provisions related to reinstatement contained in the Right to Cure Your Mortgage Default will control  and SPS will allow reinstatement any time before the foreclosure sale, notwithstanding any such limitations in the Security Instrument.

**Payment Options**
If you choose to make a payment, please send payments to the following address:

Sent via US Mail to:
**Select Portfolio Servicing, Inc.**
**PO Box 65450 Salt Lake City, UT 84165-0450**

Sent via overnight courier to:
**Select Portfolio Servicing, Inc.**
**Attn: Remittance Processing**
**3217 S. Decker Lake Dr., Salt Lake City, UT 84119**

LR081 2721                    00249064000349041200



Payments may be submitted in the following forms:

- Personal check
- Money order
- Bank wire (electronic funds transfer). Please contact SPS for the information necessary to complete a bank wire.
- Certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency.
- Western Union Quick Collect. Reference the account number above and deliver to Code City- Oswald, Code State- UT.

In some circumstances, you may be able to submit a payment through EZ Pay by calling 800-258-8602 or visiting our website at www.spservicing.com. Please remember that EZ Pay payments clear quickly, and you must have the funds in your checking account on the day you ask us to process a payment. We will obtain your consent prior to initiating payment and will advise you of any fee for this service, which may be up t ███████

SPS requires that you pay reinstatement amounts in certified funds. Certified funds include a bank wire, cashier's bank check, attorney trust account check, title or escrow company check, or Western Union Quick Collect. Please contact SPS at 800-635-9698 for instructions on submitting these funds.

## You Have Options to Avoid Foreclosure!

SPS is committed to home retention and offers many customer assistance programs designed to help customers avoid foreclosure. These programs are offered at no cost to our customers and are designed to help preserve home ownership or prevent foreclosure through structured repayment plans, special payment arrangements, modifications, short settlements, and deed-in-lieu options, if you are eligible.  If you would like to learn more about these programs, you should immediately contact an SPS representative at our toll-free number, 800-635-9698, or visit our website at www.spservicing.com. Our representatives are available by phone Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you have any questions, your assigned Relationship Manager, John Hordge, can be reached toll free at (888) 818-6032 x 51673 or by email at Relationship.Manager@spservicing.com.

**If we can reach an agreement to resolve the default, we will not proceed with and/or commence foreclosure, as long as you comply with the agreement and continue to make sufficient payments.**

## Servicemembers Civil Relief Act (SCRA)

SPS is committed to home ownership assistance for active servicemembers and veterans of the United States military. You may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.) regarding your interest rate and the risk of foreclosure if you are a servicemember or a dependent of a servicemember. Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil). Note: your state may have more expansive eligibility criteria than below.  Please contact us as soon as possible if you have any questions or believe you may be eligible.

Eligible service may include, but is not limited to:

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard), or
- Reserve and National Guard personnel who have been activated and are on Federal active duty, or
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds, or
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, or
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

LR081 2721

Please send written notice of military service as soon as possible to:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

If you have questions regarding eligibility and application requirements, please call us at 800-635-9698.

## Your Rights

If you wish to dispute your delinquency or the correctness of the past due amount listed in the notice, you may do so by providing a written dispute to SPS at the following address:

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

You may call SPS at our toll free number 800-258-8602 to discuss your dispute. However, to protect your rights under federal law, you will need to provide written notice to SPS if you believe that your dispute is unresolved.

You have the right to reinstate after acceleration of your account and commencement of foreclosure proceedings. If you reinstate, the Security Instrument shall remain fully effective as if no acceleration had occurred.

You have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

A review of the HUD-1 specifies that Union Capital Mortgage Business Trust was listed as your mortgage broker/originator for this mortgage. We are supplying this information as required by the Commonwealth of Massachusetts.

## Counseling

If you would like counseling or assistance you can contact the following: U.S. Department of Housing and Urban Development. For a list of homeownership counselors or counseling organizations in your area, go to https://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or you can call HUD at 1-800-569-4287, or you may seek help from another non-profit foreclosure avoidance agency.

Financial assistance may be available to you from programs operated by the State or Federal Government. Below is a list of Government agencies that you may wish to contact or ascertain whether you qualify for assistance.

**Massachusetts Division of Banks** (617) 956-1500 or (800) 495-BANK (2265)
**Massachusetts Housing Finance Agency** (617) 854-1000, (413) 733-0999 or (800) 439-2370
www.masshousing.com

**HUD Approved Housing Counseling** (800) 569-4287
https://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm

**Veterans Administration** (800) 827-1000

You have options to avoid foreclosure. THE TIME TO ACT IS NOW. Please call us at 800-635-9698.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**



# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
C.A.  NO. 2284CV02952

| | |
|---|---|
| STEVEN C. FUSTOLO,<br>        Plaintiff,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC. and<br>FEDERAL HOME LOAN MORTGAGE<br>CORP. AS TRUSTEE OF SCRT 2019-2[1],<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF FILING NOTICE OF REMOVAL TO FEDERAL COURT

TO:   Suffolk County Superior Court          Joe Dye Culik
      Three Pemberton Square                 Dye Culik PC
      Boston, MA  02108                       1200 E. Morehead St., Suite 260
                                              Charlotte, NC  28204

PLEASE TAKE NOTICE that Defendants Select Portfolio Servicing, Inc. and Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2019-2, have filed a Notice of Removal of the above-entitled matter in the office of the Clerk of the United States District Court for the District of Massachusetts, a copy of which is attached hereto as **Tab A**.

---

[1] The proper name of the Trust is Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2019-2.

108786709.1

Respectfully submitted,

**SELECT PORTFOLIO SERVICING, INC. and FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR THE BENEFIT OF THE FREDDIE MAC SEASONED CREDIT RISK TRANSFER TRUST, SERIES 2019-2,**

By their attorneys,

/s/ Peter F. Carr, II
Peter F. Carr, II (BBO #600069)
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Two International Place, 16th Floor
Boston, MA  02110
Telephone: (617) 342-6800
Facsimile: (617) 342-6899
pcarr@eckertseamans.com

Dated:  January 26, 2023

## CERTIFICATE OF SERVICE

I hereby certify that, on January 26, 2023, I filed and served this document through the Massachusetts Odyssey File and Serve Electronic Filing System on all counsel of record who have entered an electronic service contact as identified in the Massachusetts Odyssey File and Serve and by mail or email upon all others.

/s/ Peter F. Carr, II
Peter F. Carr, II

Dated:  January 26, 2023

2

108786709.1