# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| ) | |
| **STEVEN C. FUSTOLO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 23-cv-10166-DJC** |
| ) | |
| **SELECT PORTFOLIO SERVICING, INC.** ) | |
| **and FEDERAL HOME LOAN MORTGAGE** ) | |
| **CORP.** *as Trustee of* SCRT 2019-2, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                       **November 13, 2023**

## I.     Introduction

Plaintiff Steven C. Fustolo ("Fustolo") has filed this lawsuit against Select Portfolio Servicing, Inc. ("SPS") and Federal Home Loan Mortgage Corp., as Trustee of SCRT 2019-2 ("Freddie Mac") (collectively, "Defendants") seeking declaratory judgment that Defendants are not entitled to foreclose on the subject property because they allegedly do not hold the mortgage or the promissory note (Count I) and because of a defect in the default notice sent by SPS (Count II). D. 1-3. Fustolo also asserts claims for violation of the Real Estate Settlement Procedures Act ("RESPA") (Count III), defamation (Count IV), slander of title (Count V) and violation of Mass. Gen. L. c. 93, § 49 (Count VI). Id. Defendants have moved for dismissal as to all claims. D. 15. For the reasons stated below, the Court ALLOWS the motion as to Counts I, III, IV, V and VI and DENIES it as to Count II. Id.

## II.      Standard of Review

A defendant may move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To withstand a Rule 12(b)(6) challenge, the Court must determine if the complaint "plausibly narrate[s] a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citations omitted).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. (citation omitted).  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. (citation omitted). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

## III.      Factual Background

The following facts are drawn from Fustolo's verified complaint, D. 1-3, and the exhibits attached thereto, id. at 19–105, and are accepted as true for the purpose of resolving the pending motion to dismiss.

In late 2007, Fustolo acquired the subject property located at 115 Salem Street, Unit 14, Boston, Massachusetts (the "Property") with a quitclaim deed recorded in the Suffolk Registry of Deeds at book 42920, page 260. Id. ¶¶ 4, 7; see id. at 19–20.  On January 11, 2008, Fustolo executed a mortgage ("the Mortgage") on the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Union Capital Mortgage Business Trust

("Union Capital"), recorded in the Suffolk Registry of Deeds at book 42920, page 316, in the amount of $283,500.  Id. ¶ 8; see id. at 21.  On January 10, 2008, in connection with the Mortgage, Fustolo executed a promissory note (the "Note") in the amount of $283,500, and payable to Union Capital.  Id. ¶ 9; see id. at 44.

Paragraph 22 of the Mortgage states in relevant part:

> 22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Id. at 33.

Union Capital was a trust whose trustee was UCM, LLC, a Massachusetts limited liability company ("UCM").  Id. ¶ 11.  Union Capital was terminated on June 29, 2010 by filing a Termination of Trust with the Massachusetts Secretary of the Commonwealth.  Id. ¶ 12; see id. at 57.  UCM filed a Certificate of Cancellation of the LLC on June 30, 2010, stating that the reason for the filing of the cancellation was that the Trust for which it was acting as Trustee was being dissolved.  Id. ¶ 13; see id. at 60.

The Mortgage was assigned four times after Union Capital and UCM ceased to exist as business entities.  See id. ¶ 10.  In December 2011, MERS, as nominee for Union Capital, assigned the Mortgage to HSBC Bank USA, N.A. ("HSBC").  Id. ¶ 10; see id. at 47.  In January 2017,

HSBC assigned the Mortgage to Nationstar Mortgage LLC ("Nationstar").  Id. ¶ 10; see id. at 49.  In July 2022, Nationstar assigned the Mortgage to Federal Home Loan Mortgage Corporation, as Trustee for the Benefit of the Seasoned Credit Risk Transfer Trust, Series 2019-2 ("Trust 2019-2").  Id. ¶ 10; see id. at 52.  In October 2022, Trust 2019-2 assigned the Mortgage to Freddie Mac.  Id. ¶ 10; see id. at 55.

On April 2, 2021, SPS, the servicer of the Mortgage, sent Fustolo a valuation of the Property asserting that it was worth between $500,000 and $510,000.  Id. ¶¶ 5, 20; see id. at 64.  Fustolo obtained a valuation from an area real estate brokerage concluding that the Property was worth $350,000.  Id. ¶ 21; see id. at 74.  Fustolo sent this valuation to SPS, who acknowledged receiving it and notified Fustolo that it was "in the process of completing our research of the issue(s) identified in your correspondence" but did not otherwise respond to Fustolo's correspondence disputing the value of the Property.  Id. ¶¶ 22–25.

On May 12, 2021, Fustolo requested a copy of the front and back of the Note with any indorsements and alonges from SPS.  Id. ¶ 29; id. at 79.  On May 20, 2021, SPS provided the Note to Fustolo, which remained payable to Union Capital and contained no indorsements or alonges.  Id. ¶ 30; see id. at 83–85.  Defendants attached an affidavit (the "Mortgagee's Affidavit") filed in conjunction with a pre-foreclosure Massachusetts Land Court Servicemembers Civil Relief Act case against Fustolo.[1]  See D. 16 at 91; D. 1 ¶ 36; id. at 88.  In the Mortgagee's Affidavit, an SPS

---

[1] The Court takes judicial notice of the Mortgagee's Affidavit as an official public record.  On a motion to dismiss, "the court may consider documents attached to or expressly incorporated in the Complaint, as well as 'documents the authenticity of which are not disputed by the parties,' 'official public records,' 'documents central to plaintiff's claim,' and 'documents sufficiently referred to in the complaint' without converting the motion into one for summary judgment."  Wilborn v. Walsh, 584 F. Supp. 2d 384, 386 (D. Mass. 2008) (quoting Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993)).

representative attested that she was "[a]cting on behalf of the person(s) or entity(ies) currently holding the subject Mortgage and the note."  D. 16 at 91.

On or about September 7, 2021, SPS sent Fustolo a "90 Day Right to Cure Your Mortgage Default" notice ("the Notice").  Id. ¶ 53; see id. at 98.  The Notice, in relevant part, informed him that he had failed to make his monthly loan payments and that he "must pay the past due amount . . . on or before December 9, 2021, which is 90 days from the date of this notice."  Id. at 98.  Also on September 7, 2021, SPS sent Fustolo a letter (the "Letter") which stated, in relevant part, that he has "the right to bring a court action to assert the non-existence of a default or any other defense [he] may have to acceleration and sale."  Id. ¶ 55; id. at 102.

On May 6, 2013, an involuntary bankruptcy was filed against Fustolo in the U.S. Bankruptcy Court for the District of Massachusetts.  Id. ¶ 34; see id. at 86.  An automatic stay went into effect, prohibiting his creditors from attempting to collect any debt from him.  Id. ¶ 35.  On January 31, 2014, in connection with the bankruptcy proceedings, Fustolo stated his intent to surrender the Property.  D. 16 at 85.

Defendants have sent Fustolo collection notices "virtually every month" and reported the account on his credit report, contending that "Fustolo is presently obligated to tender mortgage payments."  D. 1-3 ¶¶ 37–39; see id. at 90, 95.  To date, "Defendants have already scheduled one foreclosure, and have requested permission from the Bankruptcy Court for relief from the automatic stay in order to foreclose."  Id. ¶ 59.

## IV.    Procedural History

Fustolo commenced this action on December 30, 2022 in Suffolk Superior Court.  D. 1-3.  Defendants removed the action to this Court on January 26, 2023, D. 1, and moved for dismissal,

D. 15.  The Court heard the parties on the pending motion and took the matter under advisement.

D. 22.

## V.       Discussion

### A.       Fustolo's Claims Are Not Barred by Judicial Estoppel

Defendants argue that judicial estoppel bars Fustolo from "asserting any title rights to the Property," including "contesting the power of the Trust to enforce the Mortgage" because he stated his intent to surrender the Property in the involuntary Chapter 7 bankruptcy case.  D. 16 at 5.

"[T]he doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding."  United States v. Szypt, 785 F.3d 31, 41 (1st Cir. 2015) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003)) (internal quotation marks omitted).  The doctrine is "equitable and thus cannot be reduced to a precise formula or test." Zedner v. United States, 547 U.S. 489, 504 (2006).  "It is, however, widely agreed that, at a minimum, two conditions must be satisfied before judicial estoppel can attach."  Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (collecting cases).  "First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive."  Id. (citations omitted).  "Second, the responsible party must have succeeded in persuading a court to accept its prior position."  Id. (citations omitted).  Here, the second factor weighs against dismissing on this basis.

Although Defendants may be correct that Fustolo's surrender of the Property is inconsistent with his present challenge to the foreclosure of the Mortgage, see Ibanez v. U.S. Bank Nat. Ass'n, 856 F. Supp. 2d 273, 276 (D. Mass. 2012) (defining "surrender" in the Chapter 7 context as "agree[ing] to make the collateral available to the secured creditor" and concluding that this was

"fatal" to his claims), it cannot be said that Fustolo was successful in convincing the bankruptcy court of his position because it denied his discharge.  See D. 16 at 56 (reflecting docket entry #391 denying discharge).  By contrast, in each of the cases Defendants rely on, the plaintiff attempted to challenge a foreclosure after receiving a discharge in exchange for surrendering the property in question.  See Ibanez, 856 F. Supp. 2d at 274–75 (noting that "Ibanez (and his spouse) were discharged of their debts"); Souza v. Bank of Am., Nat. Ass'n, 13-cv-10181-PBS, 2013 WL 3457185, at *1 (D. Mass. July 8, 2013) (noting that "the Bankruptcy Court granted Souza a discharge of her debt"); In re Schiavone, No. 14 SBQ 10142 04-001, 2016 WL 7496166, at *10 (Mass. Land Ct. Dec. 20, 2016) (noting that "the Schiavones' debt was discharged"); Pacia v. Deutsche Bank Nat'l Tr. Co. as Tr. for Morgan Stanley ABS Cap. I, Inc. Tr. 2006-NC5, Mortg. Pass Through Certificates Series 2006-NC5, No. 22-cv-0014-MSM-PAS, 2022 WL 16961417, at *1 (D.R.I. Nov. 16, 2022) (noting that "Mr. Pacia received a bankruptcy discharge").  Because Fustolo did not succeed in persuading the bankruptcy court to discharge his debt in exchange for his surrender of the Property, the Court declines to apply judicial estoppel, an equitable doctrine, here and turns to Defendants' other bases for dismissing Fustolo's claims.

### B.    **Declaratory Judgment as to Mortgage and Note Assignments (Count I)**

Defendants argue that Fustolo does not state a claim to prohibit enforcement of the Mortgage.  D. 16 at 6.  Count I seeks a declaration that Defendants are not entitled to foreclose the Property on two legal theories.  See D. 1 at 9–13.  The Court addresses each in turn.

#### 1.    *Assignment of the Mortgage*

Fustolo first alleges that Defendants do not hold a valid assignment of the Mortgage.  Id. ¶¶ 47–48.  "Under Massachusetts law, if a mortgage grants a statutory 'power of sale' and the mortgagor defaults, as is the case here, an authorized party 'may sell the property at a public

auction and convey the property to the purchaser in fee simple.'" Lewis v. Bank of New York Mellon Tr. Co., N.A., No. 16-cv-11122-FDS, 2016 WL 4555969, at *3 (D. Mass. Aug. 31, 2016) (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 641 (2011)). "A mortgagee has the authority to exercise the power of sale only if it was the assignee of the mortgage at the time of the notice of sale and the subsequent foreclosure sale." Id. (quoting Ibanez, 458 Mass. at 648). "However, for foreclosure sales occurring after June 22, 2012, simply holding the mortgage is necessary, but not sufficient, to exercise a power of sale; a mortgagee must also hold the promissory note or act as the authorized agent of the note holder." Id. (citing Eaton v. Federal Nat'l Mortg. Ass'n, 462 Mass. 569, 582–84 (2012)).

"The MERS system is intended to lower transaction costs and facilitate the securitization of mortgage notes." Id. "A MERS member, upon becoming a lender, names MERS as its nominee and the mortgagee of record and inputs the mortgage into the MERS database. The mortgage note can then be assigned freely among MERS members, with MERS—as mortgagee of record—authorizing and memorializing these trades while circumventing much of the time and paperwork associated with traditional assignments. Only when a note is transferred to a non-MERS member institution does MERS transfer away its interest as mortgagee, thus ending its involvement in the assignment process." Id. (quoting Woods, 733 F.3d at 351 n.1). "If a borrower defaults and the note holder seeks to foreclose on the collateral, MERS, acting as the nominee for the original lender and its successors and assigns (the subsequent note holders), assigns the mortgage to the note holder to comply with the rule that the mortgage and note must be unified before foreclosure." Id. at *4.

Fustolo alleges that Defendants do not hold the mortgage because the original lender, Union Capital and its trustee UCM, dissolved in June 2010 before the Mortgage was purportedly

assigned from MERS, as nominee for Union Capital, to HSBC in December 2011.  D. 1 ¶¶ 10–19. This argument, however, has been consistently rejected by courts in this district where MERS is named as a nominee of the original lender and its successors and assigns.  See, e.g., Lewis, 2016 WL 4555969, at *4–5 (concluding that a lender's dissolution "did not preclude MERS from assigning the mortgage" to another lender); Rosa v. Mortg. Elec. Sys., Inc., 821 F. Supp. 2d 423, 431 (D. Mass. 2011) (same); Kiah v. Aurora Loan Servs., LLC, No. 10-cv-40161-FDS, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011) (same); Boguslav v. BLB Trading, LLC, 136 F. Supp. 3d 11, 14 (D. Mass. 2015) (same).  Accordingly, Union Capital and UCM's dissolution in 2010 did not preclude MERS from assigning the mortgage to HSBC in 2011.

### 2.    Identity of the Note Holder

Fustolo also challenges Defendants' status as the holder of the Note.  D. 1-3 ¶ 47. Specifically, Fustolo alleges that the Note was payable only to Union Capital and was "never indorsed or assigned to any subsequent holders."  Id. ¶ 30; see D. 1-3 at 83–85.  Even accept this allegation as true, Massachusetts law, however, "permits one who, although not the noteholder himself, [to act] as the agent of the noteholder and stand[ ] 'in the shoes' of the mortgagee to effectuate a foreclosure."  Culley v. Bank of Am., N.A., No. 18-cv-40099-DHH, 2019 WL 1430124, at * 6 (D. Mass. Mar. 29, 2019) (quoting Eaton, 462 Mass. at 586).  "One way for the foreclosing entity to 'establish that it either held the note or acted on behalf of the note holder at the time of a foreclosure sale [is] by filing an affidavit in the appropriate registry of deeds'" pursuant to Mass Gen. L. c. 183, § 5B.  HMC Assets, LLC v. Conley, No. 14-cv-10321-MBB, 2016 WL 4443152, at *17 (D. Mass. Aug. 22, 2016) (alteration in original) (quoting Eaton, 462 Mass. at 589 n.28).

Here, even accepting that Fustolo is correct that the Note is payable only to Union Capital and contains no indorsements or allonges, the Mortgagee's Affidavit, D. 16 at 91, is sufficient to establish that SPS is acting on behalf of the note holder in carrying out the foreclosure because it was filed at the appropriate registry, namely, at the Massachusetts Land Court, and certifies that SPS is "[a]cting on behalf of the person(s) or entity(ies) currently holding the subject mortgage and the note."   D. 16 at 91; see HMC Assets, 2016 WL 4443152, at *18 (concluding that foreclosing entity held note where affidavit registered with the Land Court certified that foreclosing entity was acting on behalf of note holder).  Fustolo's challenge to Defendants' status as the holder of the Note, therefore, fails to state a claim.

Accordingly, the Court dismisses Count I.

**C.    Declaratory Judgment as to the Notice of Default (Count II)**

 Defendants have also moved to dismiss Fustolo's claim that the Notice was defective because it failed to state that "Fustolo had the 'right to bring a court action' as required under Paragraph 22" of the Mortgage.  D. 1  ¶ 54.

Massachusetts is a non-judicial foreclosure state, where a mortgagee need not obtain judicial authorization to foreclose on a mortgaged property if, as here, "the mortgage itself gives the mortgagee a power of sale and includes by reference the statutory power" set out in Mass. Gen. L. c. 183, § 21.  Pinti v. Emigrant Mortg. Co., Inc., 472 Mass. 226, 232 (2015) (citation omitted). To foreclose on a mortgaged property, the mortgagee "first [must] comply[] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale."  Mass. Gen. L. c. 183, § 21.  Because this is a "substantial power . . . without judicial oversight, [courts have] followed the traditional and familiar rule that one who sells under a power [of sale] must follow strictly its terms; the failure to do so results in no valid execution of the

power, and the sale is wholly void." Fed. Nat'l Mortg. Ass'n v. Marroquin, 477 Mass. 82, 86 (2017) (second alteration in original) (citation and internal quotation marks omitted).

This strict compliance regime, however, does not require a mortgagee's "punctilious performance of every single mortgage term." Pinti, 472 Mass. at 235. Rather, the Supreme Judicial Court held in Pinti that a foreclosing mortgagee must only strictly comply "with the terms of the actual power of sale in the mortgage, [and] with any conditions precedent to the exercise of the power that the mortgage might contain." Id. at 233–34 (citing cases). These terms and conditions precedent include only "(1) terms directly concerned with the foreclosure sale authorized by the power of sale in the mortgage, and (2) those prescribing actions the mortgagee must take in connection with the foreclosure sale — whether before or after the sale takes place." Id. at 235. Here, Paragraph 22, among other terms, states that the notice of acceleration "shall further inform Borrower of . . . the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." D. 1-3 at 33. Because this provision of Paragraph 22 constitutes a term prescribing actions the mortgagee must take in connection with the foreclosure sale, SPS was required to inform Fustolo in the Notice that he has a right to bring a court action. Pinti, 472 Mass. at 240.

The Notice does not contain such "right to bring a court action" language, see D. 1-3 at 98–99, and Defendants do not argue that it does. Rather, Defendants appear to take the position that the "notices," that is, the Notice and the separate Letter (dated the same day as the Notice), strictly comply with Paragraph 22 when read together. See D. 16 at 9. While Defendants are correct that the Letter contains the requisite "right to bring a court action" language, D. 1-3 at 102, it is not clear as a matter of law that the separate Notice and Letter, when read together, strictly comply with Paragraph 22.

This precise issue has been addressed by at least one state court.  See Towd Point Mortg. Trust v. Cruz, No. 19H79SP005472, 8 W. Div. H. Ct. 116 (Mass. Hous. Ct. Mar. 11, 2021); D. 19-2.  In that case, as here, SPS sent a mortgagor two separate documents, a "90-Day Right to Cure Your Mortgage Default" notice and a letter addressed to the mortgagor that was dated the same day as the notice.  Id. at 118.  SPS argued, inter alia, that "the Letter was intended to be read together with the 90-Day Notice, and its provisions are incorporated into the 90-Day Notice."  Id. at 124.  The court rejected this reading, noting that the "plain language" of the mortgage "states with clarity that the required information must be set forth in 'the Notice.'"  Id. at 125.  The court did not categorically reject the theory that a right to cure notice could "incorporate information set forth in a carefully prepared supplemental letter."  Id. at 127.  Such a letter, however, would have to "be structured so that a mortgagor of average intellect would recognize and understand that important information about their mortgage default is being provided that is part of the default/right to cure notice."  Id.  The court concluded that the letter provided by SPS, which contained "multiple single-spaced paragraphs over four pages" and the requisite language "in the next to last paragraph on page three," fell "far short of meeting that standard."  Id.

Similarly, here the Notice does not contain the required "right to bring a court action" language and the Letter contains multiple single-spaced paragraphs over three pages and the requisite language in the middle of the third page.  See D. 1-3 at 98–102.  It, therefore, cannot be said that Fustolo has failed to state a claim.[2]

Accordingly, the Court denies Defendants' motion to dismiss Count II.

---

[2] This conclusion is also consistent with a recent decision allowing an identical claim to survive a motion to dismiss in another session of this court involving these same parties.  See Fustolo v. Select Portfolio Servicing, Inc. et al., 23-cv-10033-RGS, D. 14 (D. Mass. March 20, 2023).

### D.   RESPA (Count III)

Fustolo claims that SPS violated RESPA by failing to respond to Fustolo's notice informing SPS of the alleged overvaluation of the Property and by failing to correct the error as required by 12 C. F. R. § 1024.  D. 1-3 ¶¶ 62–65.  Defendants argue that the alleged overvaluation was provided in connection with Fustolo's loss mitigation application, which is not "covered error" under RESPA.  D. 16 at 10.  The Court agrees with Defendants.

To state a claim under RESPA pursuant to 12 U.S.C. § 2605, a plaintiff must show:  "(1) that the servicer failed to comply with the statute's [qualified written request] rules; and (2) that the plaintiff incurred 'actual damages' as a result of this failure." Okoye v. Bank of New York Mellon, No. 10-cv-11563, 2011 WL 3269686, at *17 (D. Mass. July 28, 2011) (alteration in original) (citation omitted).  Alternatively to showing actual damages, a plaintiff may also plead statutory damages, requiring a "showing of a pattern or practice of noncompliance by the servicer." Afridi v. Residential Credit Cols., Inc., 189 F. Supp. 3d 193, 200 (D. Mass. 2016) (citation omitted).  "Section 1024.35 only requires a servicer to respond to qualified written requests related to certain types of covered errors, and disputes related to the substance of a servicer's review of a loss mitigation application do not fall under the umbrella of covered errors." Canty v. Wells Fargo Bank, N.A., 463 F. Supp. 3d 57, 64 (D. Mass. 2020).

Here, SPS prepared this valuation as part of Fustolo's "request for mortgage assistance." D. 1-3 at 62.   A request for mortgage assistance is a loss mitigation application.  See Lage v. Ocwen Loan Servicing LLC, 839 F.3d 1003, 1006 (11th Cir. 2016) (noting that "[a] loss mitigation application is simply a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage") (citation omitted); 12 C.F.R. § 1024.31 (defining "loss mitigation option" to mean "an alternative

to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower").  SPS was, therefore, not obligated to respond to Fustolo's letter because the alleged overvaluation error relates to a loss mitigation application, which is not covered error under 12 C.F.R. § 1024.35.

Fustolo argues that the alleged overvaluation falls under the catch-all provision of Section 1024.35(b)(11), covering "[a]ny other error relating to the servicing of a borrower's mortgage loan."  D. 19 at 13 (alteration in original and emphasis removed).  Fustolo relies upon Naimoli v. Ocwen Loan Servicing, LLC, 22 F.4th 376 (2d Cir. 2022) to support this argument.  Id.  In Naimoli, a loan servicer denied a loan modification after the servicer lost a borrower's loan documents.  Naimoli, 22 F.4th at 379.  The Second Circuit concluded that the mismanagement of documents is an error "related to" servicing of the borrower's loan and is covered by the catch-all provision of RESPA.  Id. at 383–84.  But, importantly, the Second Circuit's holding is still limited to servicing errors.  The Naimoli court noted that the identification of "errors while in pursuit of a loss mitigation option does not impair their connection to the servicing of [the borrower's] loan," as it was the "loss of the loan documents [that] made [the borrower] ineligible for the loan modification" and in turn "jeopardized [the servicer's] ability to make payments to the loan's owners in the event of a foreclosure."  Id. at 384.

The alleged overvaluation of the Property in connection with Fustolo's application for mortgage assistance, on the other hand, is a contractual issue and does not relate to the servicing of the loan.  See Morgan v. Caliber Home Loans, Inc., 26 F.4th 643, 651 (4th Cir. 2022) (distinguishing Naimoli and concluding that "correspondence limited to the dispute of contractual issues that do not relate to the servicing of the loan, such as loan modification applications" were not covered under RESPA); Fox v. Statebridge Co., LLC, No. CV SAG-21-01972, 2022 WL

14

4386231, at *5 (D. Md. Sept. 21, 2022) (distinguishing <u>Naimoli</u> and concluding that RESPA did not apply to plaintiff's complaint of error because it was "a contractual issue, not a servicing matter").

Accordingly, the Court dismisses Count III.

**E.      <u>Defamation (Count IV)</u>**

Fustolo also raises a claim for defamation, alleging that Defendants published false statements about him, "namely, that he owed Freddie Mac payments under the Note and Mortgage, that the payments were in default, and that Freddie Mac was the party entitled to foreclose on and to sell the Property."  D. 1-3 ¶ 67.

To prevail on a defamation claim under Massachusetts law, "a plaintiff must 'establish that the defendants published a false statement about him to a third party that either caused him economic loss or was the type that is actionable without proof of economic loss.'"  <u>Driscoll v. Bd. of Trs. of Milton Acad.</u>, 70 Mass. App. Ct. 285, 295–96 (2007) (quoting <u>Phelan v. May Dept. Stores Co.</u>, 443 Mass. 52, 55–56 (2004)).   "A statement is defamatory if it tends to harm the reputation of another either by lowering the esteem in which he is held or by discouraging others from associating with him." <u>Pan Am Systems, Inc. v. Atlantic Northeast Rails and Ports, Inc.</u>, 804 F.3d 59, 64 (1st Cir. 2015) (citation omitted).   "[I]naccuracy by itself does not make a statement defamatory," <u>Yohe v. Nugent</u>, 321 F.3d 35, 41 (1st Cir. 2003), instead there must be a showing that the alleged statement could subject a plaintiff to "contempt, hatred, scorn or tend to harm his standing in the community."   <u>Id.</u> (citation omitted). "[W]hether a communication is reasonably susceptible of a defamatory meaning, is a question of law for the court."  <u>Phelan</u>, 443 Mass. at 56 (citations omitted).

Here, Fustolo fails to state a claim of defamation because the complaint's alleged falsehoods are not "reasonably susceptible of a defamatory meaning." Id. Although the complaint alleges that Defendants are not entitled to foreclose on the Property, the complaint (and the exhibits incorporated therein) does not allege that Fustolo made timely payments under the Note and the Mortgage. See generally D. 1-3. Even assuming *arguendo* that Defendants were the wrong foreclosing entities (which this Court otherwise rejects as a matter of law as discussed above), see id. ¶ 47, such allegation alone could not reasonably subject Fustolo to economic loss or rise to the level of subjecting him to "contempt, hatred, scorn or tend to harm his standing in the community." Phelan, 443 Mass. at 56.

Accordingly, the Court dismisses Count IV.

### F.      Slander of Title (Count V)

Fustolo also fails to state a claim of slander of title. "In Massachusetts, a person is liable for slander of title, i.e., 'injurious falsehood,' if he or she (a) publishes a false statement; (b) that harms the interests of another; (c) with the intent to harm the interests of another or "either recognizes or should recognize that it is likely to do so;" and (d) knows that the statement is false "or acts in reckless disregard of its truth or falsity." CMI Assocs., LLC v. Reg'l Fin. Co., LLC, 775 F. Supp. 2d 281, 289 (D. Mass. 2011) (quoting Dulgarian v. Stone, 420 Mass. 843, 852 (1995)).

Fustolo's slander of title claim is premised on the same allegedly false statements undergirding his defamation claim. See D. 1-3 ¶¶ 67, 73. The complaint, however, contains no allegations to suggest that these allegedly false statements were made knowingly or with reckless disregard of the truth. See RFF Fam. P'ship, LP v. Link Dev., LLC, 238 F. Supp. 3d 168, 172 (D.

Mass. 2017) (noting that "[s]uch lack of scienter is sufficient to defeat a claim for slander of title") (citing <u>CMI Assocs.</u>, 775 F. Supp. 2d at 289).

Accordingly, the Court dismisses Count V.

### G.    Debt Collection Practices (Count VI)

Finally, Fustolo has asserted that Defendants violated Mass. Gen. L. c. 93, § 49, a statute that prohibits unfair or deceptive debt collection practices. D. 1-3 at 16. Section 49, however, "does not provide a private right of action." <u>DeCotis v. Specialized Loan Servicing LLC</u>, No. 22-cv-10547-NMG, 2022 WL 17156022, at *5 (D. Mass. Nov. 22, 2022) (citation omitted). "A violation of § 49 is cognizable only to the extent it forms a basis for liability with respect to a plaintiff's Chapter 93A claim." <u>Id.</u> (citation omitted).

Even assuming *arguendo* that the instant complaint asserted a Chapter 93A claim, this claim would fail. "'[A]s a special element' of a Chapter 93A cause of action, the plaintiff's complaint must allege that the plaintiff sent a demand letter to the defendant." <u>O'Connor v. Nantucket Bank</u>, 992 F. Supp. 2d 24, 38 (D. Mass. 2014) (quoting <u>Entrialgo v. Twin City Dodge, Inc.</u>, 368 Mass. 812, 812 (1975)). "Even where a violation of another statute constitutes a per se violation of Ch. 93A, the demand letter requirement must be met." <u>Id.</u> (citation omitted); <u>see McKenna v. Wells Fargo Bank, N.A.</u>, 693 F.3d 207, 218 (1st Cir. 2012) (same). Here, the complaint does not allege that Fustolo sent a demand letter to Defendants at least thirty days prior to filing this action. Fustolo, therefore, fails to state a Chapter 93A claim.

Accordingly, the Court dismisses Count VI.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss as to Counts I, III, IV, V and VI and DENIES the motion as to Count II. D. 15.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
